### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GIFFORDS,<br>*Plaintiff*, | |
| v. | Civil Action No. 1:21-cv-2887-EGS |
| NATIONAL RIFLE ASSOCIATION OF<br>AMERICA POLITICAL VICTORY FUND,<br>*et al*.<br>*Defendants*. | |

### DEFENDANTS THE NATIONAL RIFLE ASSOCIATION OF AMERICA POLITICAL VICTORY FUND, THE NATIONAL RIFLE ASSOCIATION OF AMERICA, AND JOSH HAWLEY FOR SENATE'S JOINT MOTION TO HOLD PROCEEDINGS IN ABEYANCE

Pursuant to Fed. R. Civ. P. 7(b) and this Court's inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), Defendants the National Rifle Association of America and the National Rifle Association of America Political Victory Fund (collectively, the "NRA Affiliates"), and Josh Hawley For Senate (the "Hawley Campaign") respectfully move the Court to hold the proceedings in the above captioned matter in abeyance pending resolution by this Court of the related cases captioned as *The National Rifle Association of America Political Victory Fund et al. v. Federal Election Commission*, 1:22-cv-01017 ("NRA FOIA Suit"), and *Josh Hawley For Senate v. Federal Election Commission*, 1:22-cv-01275 ("Hawley FOIA Suit") (collectively, the "FOIA Suits").

For the reasons set forth in the accompanying Statement of Points and Authorities, judicial economy and the balance of equities favor a stay pending resolution of the FOIA Suits—both of which are assigned to this Honorable Court—because these closely related matters will settle

threshold questions that are likely to be dispositive of this action, without unfairly prejudicing

Plaintiff. Moreover, Defendants here would be unfairly prejudiced if they are forced to litigate this

case before the FOIA Suits are resolved and the FEC's unredacted voting records and statement

of reasons are publicly released, just as the same would result in a needless use of judicial resources

in the instant case.

On July 26, 2022, counsel for the Hawley Campaign conferred with Plaintiff's counsel as

to the relief sought in this joint motion. Plaintiff's counsel indicated that Plaintiff opposes the relief

sought herein.

This motion is accompanied by a Statement of Points and Authorities and corresponding

exhibits, as well as a Proposed Order. *See* LCvR 7(a), (c).

Dated: July 29, 2022

DICKINSON WRIGHT PLLC

/s/ Charles R. Spies
Charles R. Spies, Bar ID: 989020
1825 Eye Street, N.W., Ste 900
Washington, D.C. 20006
(202) 466-9654
Facsimile: (844) 670-6009
cspies@dickinsonwright.com

Robert L. Avers, Bar ID: MI0083
350 S. Main Street, Ste 300
Ann Arbor, MI 48104
(734) 623-1672
ravers@dickinsonwright.com

*Attorneys for Defendants the National Rifle*
*Association of America & the National Rifle*
*Association of America Political Victory*
*Fund*

Respectfully submitted,

HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC

/s/ Jason Torchinsky
Jason Torchinsky, Bar ID: 976033
J. Michael Bayes, Bar ID: 501845
Jessica F. Johnson, Bar ID: 976688
Dennis W. Polio, Bar ID: 198054
2300 N Street, NW, Ste 643A
Washington, D.C. 20037
(202) 737-8808
Fax: (540) 341-8809
jtorchinsky@holtzmanvogel.com
mbayes@holtzmanvogel.com
jessica@holtzmanvogel.com
dwpolio@holtzmanvogel.com

*Attorneys for Defendant Josh Hawley for*
*Senate*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GIFFORDS,<br>*Plaintiff*,<br><br><br>v.<br><br>NATIONAL RIFLE ASSOCIATION OF<br>AMERICA POLITICAL VICTORY FUND,<br>*et al.*<br>*Defendants*. | Civil Action No. 1:21-cv-2887-EGS |

**DEFENDANTS THE NATIONAL RIFLE ASSOCIATION OF AMERICA POLITICAL
VICTORY FUND, THE NATIONAL RIFLE ASSOCIATION OF AMERICA, AND JOSH
HAWLEY FOR SENATE'S STATEMENT OF POINTS AND AUTHORITIES IN
SUPPORT OF THEIR JOINT MOTION TO HOLD PROCEEDINGS IN ABEYANCE**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I. BACKGROUND .......................................................................................................... 1

    A.    The FEC MURs. ................................................................................................. 1

    B.    Preceding Litigation: *Giffords v. FEC*. ............................................................ 2

    C.    The Instant Litigation: *Giffords v. NRA, et al.* ............................................... 4

        1.    The NRA Affiliates' Motion to Dismiss .................................................... 4

        2.    The Hawley Campaign's Motion to Dismiss ............................................. 6

    D.    Defendants' Efforts to Access the FEC's Administrative Record Via Freedom of Information Act Requests. ................................................................. 9

        1.    The NRA Affiliates' FOIA Request. ...................................................... 10

        2.    The Hawley Campaign's FOIA Request. ................................................ 12

    E.    Three Commissioners Publicly Acknowledged the FEC's Deceptions. ............. 15

        1.    The May 13, 2022 Statement of Commissioners Dickerson, Cooksey, and Trainor regarding Concluded Enforcement Matters. ........ 15

        2.    The June 28, 2022 Statement of Commissioners Dickerson, Cooksey, and Trainor regarding FOIA Litigation. .................................. 16

II. ARGUMENT ............................................................................................................. 17

III. CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Basardh v. Gates*, 543 F.3d 1068 (D.C. Cir. 2008) .................................................... 18

*Belize Soc. Dev. Ltd. v. Belize*, 668 F.3d 724 (D.C. Cir. 2012) .................................. 18

*Campaign Legal Ctr. & Democracy 21 v. Fed. Election Comm'n*, 952 F.3d 352 (D.C. Cir. 2020) ......................................................................................................................... 9

*CREW v. FEC*, 993 F.3d 880 (D.C. Cir. 2021) ............................................... 6, 7, 8, 21

*Democratic Cong. Campaign Comm. v. Fed. Election Comm'n*, 831 F.2d 1131 (D.C. Cir. 1987) ........................................................................................................................ 10

*Fed. Election Comm'n v. Nat'l Republican Senatorial Comm.*, 966 F. 2d 1471 (D.C. Cir. 1992) ........................................................................................................................ 10

*Feld Entm't, Inc. v. ASPCA*, 523 F. Supp. 2d 1 (D.D.C. 2007) .................................. 20

*Giffords v. FEC*, No. 1:19-cv-1192-EGS (D.D.C.) ............................................. passim

*Gordon v. Fed. Deposit Ins. Corp.*, 427 F.2d 578 (D.C. Cir. 1980) ........................... 20

*Hisler v. Gallaudet University*, 344 F. Supp. 2d 29 (D.D.C. 2004)............................ 18

*IBT/HERE Emple. Representatives' Council v. Gate Gourmet Div. Ams.*, 402 F. Supp. 2d 289 (D.D.C. 2005) .................................................................................................... 22

*Josh Hawley for Senate v. FEC*, No. 1:22cv1275 (D.D.C.) ........................... 12, 13, 14

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ................................................... 18, 19, 21

*Nat'l Shopmen Pension Fund v. Folger Adam Sec., Inc*. 274 B.R. 1 (D.D.C. 2002) ................ 24

*The National Rifle Association of America Political Victory Fund et al v. Federal Election Commission,* 1:22-cv-01017 (D.D.C.).............................................. 10, 11

**Statutes**

52 U.S.C. § 30106.......................................................................................................... 7

52 U.S.C. § 30109.................................................................................................. passim

**Regulations**

11 C.F.R. § 111.20......................................................................................................... 9

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................ 4, 6

**Miscellaneous**

Statement of Chairman Allen Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III Regarding Freedom of Information Act Litigation (June 28, 2022)................passim

Statement of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III Regarding Concluded Enforcement Matters (May 13, 2022).............passim

# I. BACKGROUND

## A.     The FEC MURs.

Defendants are administrative respondents in a series of Federal Election Commission ("FEC" or "Commission") enforcement matters that are the subject of several civil actions before this Court, including *Giffords v. FEC*, No. 1:19-cv-1192-EGS, and *Giffords v. National Rifle Association of American Political Victory Fund, et. al.*, No. 1:21-cv-02887-EGS (hereinafter, "*Giffords v. NRA*"). Between July and December 2018, Plaintiff filed four administrative complaints against Defendants, which were designated by the FEC as Matters Under Review ("MUR") 7427, 7497, 7524, 7553.[1] As each Defendant explained in their respective responses before the FEC, each of Plaintiff's administrative complaints was devoid of evidence sufficient to show the respondents violated the Federal Election Campaign Act of 1971, as amended (the "FECA").

Although Plaintiff brought this suit based on the *appearance* that the administrative complaints sat idle before the FEC for several years, things are not as they may appear. As explained in the Defendants' respective motion to dismiss papers, the FEC's ordinary course when, as here, the FEC deadlocks on whether to find reason to believe a violation of FECA occurred, is for the controlling Commissioners to issue a statement of reasons reflecting the rationale for their decision and for the Commission to close the file. Typically, that leaves the complainant with the option of challenging as "contrary to law" the statement of reasons serving as the Commission's decision for judicial review purposes. A troubling practice, however, has been revealed in recent months.

---

[1] Plaintiff filed a supplement to MUR 7497 that was designated as MUR 7621 by the FEC. A separate administrative complainant filed two complaints in 2019 that raised identical issues as Plaintiff's complaints and were designated as MURs 7558 and 7560.

Characterized in this case as the "Weintraub Scheme," *see generally* ECF No. 35-1 at 10-14, certain Commissioners on the losing end of reason to believe votes are refusing to close matters, which under the FEC's internal practices leaves the administrative record—including the statement of reasons reflecting the rationale and result disfavored by these particular Commissioners—shielded both from public view, *and from judicial review*, despite the fact that the Commission has already reached a full and final disposition of the matter. The administrative complainant then sues the FEC under the guise that the FEC has failed to act on the administrative complaint, and those same Commissioners that refused to close the file for the sake of shielding the Commission's final disposition from public view then hamstring the FEC's ability to defend itself in Court, which then results in a court order permitting that same administrative complainant to sue the respondent directly in federal court—despite that respondent having prevailed before the Commission as a result of the undisclosed Commission decision not to proceed with an investigation. *See id.* As further evidenced by formal statements issued in recent weeks by three of the six Commissioners—*see infra* Section I.E.2.—that is precisely what happened here.

**B.      Preceding Litigation: *Giffords v. FEC.***

On April 24, 2019, Plaintiff Giffords filed a lawsuit in this Court alleging unlawful delay by the FEC in acting on MURs 7427, 7497, 7524, and 7553. *See Giffords v. FEC*, No. 1:19-cv-1192-EGS. Following the loss of a quorum in the second half of 2020, the FEC considered and acted on MURs 7427 and 7497 on February 9, 2021. Memorandum Opinion at 9, *Giffords v. FEC*, No. 1:19-cv-01192-EGS (Oct. 14, 2021). The FEC voted 2-3 on a motion to find no reason to believe that a violation of the law had occurred. *Id*. "At the following session on February 23, 2021, the FEC held a series of votes related to the four administrative matters. . . . By a vote of 3-2, the FEC failed to find reason to believe violations occurred. By a vote of 2-3, the FEC also failed to find no reason to believe violations occurred." *Id*. at 9-10 (internal citations omitted). The

2

same day, the Commission rejected a motion to close the enforcement matters by a vote of 2-3." *Id*.

Then, as stated by the FEC's counsel in open court during a status conference, the FEC "took the matters up in the next executive session on October 26, 2021." Hr'g Tr., *Giffords v. FEC*, No. 1:19-cv-1192-EGS (D.D.C. Nov. 1, 2021), ECF No. 78 at 5:19-24 ("Hr'g Tr."). During that executive session, it was confirmed that the Commissioners had not changed their positions from their February 2021 vote as to whether to find reason to believe that some violation had occurred in the matters. *Id*. at 5:25 – 6:10. While the Commissioners then took an additional vote on whether to close the file, which failed by a vote of two in favor, three opposed, and one recusal, FEC Counsel also reported that "the two commissioners who had voted to find no reason to believe violations were committed and to close the file . . . submitted to the administrative record their statement of reasons; that statement will be released publicly when the files in the matters are closed." *Id*. at 6:11 – 16.

The fact that the Commission had held reason to believe votes on the underlying MURs, and also that the controlling Commissioners had issued a statement of reasons, clearly caused some level of doubt in *Giffords v. FEC* as to whether the FEC had truly failed to act as is required for the Court to permit a private suit under 52 U.S.C. § 30109(a)(8)(C). Indeed, during the November 1, 2021, status conference, this Court acknowledged that "if the Court hypothetically today were to say to the plaintiff, proceed with your private action, then [the issue of whether the prerequisites for a private suit under section 30109(a)(8)(C) had truly been met] would be a legitimate issued to be raised by defense counsel" in that private action. Hr'g Tr. at 8:1 – 4. Notwithstanding the question of whether the statutorily required conditions precedent to a direct suit were satisfied, namely, whether the FEC had indeed failed to act on the administrative complaints despite the

3

failed reason to believe votes and the presence of the controlling Commissioners' statement of reasons in the administrative record, the Court held that the FEC had failed to conform to the Court's order and authorized Plaintiff to file suit against the respondents under 52 U.S.C. § 30109(a)(8)(C). *See Giffords v. FEC*, No. 1:19-cv-01192-EGS, ECF No. 75 (Order dated Nov. 1, 2021).

### C.    The Instant Litigation: *Giffords v. NRA, et al.*

The following day, November 2, 2021, Giffords filed a direct suit against the Defendants in the present case. Each of the Defendants timely moved to dismiss under Rule 12 of the Federal Rules of Procedure. *See* ECF Nos. 30 (Matt Rosendale for Montana's Motion to Dismiss); 31 (Josh Hawley for Senate's Motion to Dismiss); & 35 (NRA Affiliates' Motion to Dismiss). Those motions, two of which are relevant to this Motion as briefly summarized below, are now fully-briefed before the Court.

### 1.    The NRA Affiliates' Motion to Dismiss

The NRA Affiliates seek dismissal of Plaintiff's complaint under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Pertinent to this Motion, the NRA Affiliates seek dismissal under Rule 12(b)(1) because Plaintiff's basis for subject matter jurisdiction—the notion that the FEC somehow "failed to act" on Plaintiff's administrative complaints under 52 U.S.C. § 30109 (a)(8) despite the Commission having failed to muster the requisite number of votes to find reason to believe that some violation had occurred in the underlying MURs, and despite the controlling Commissioners having submitted their final statement of reasons to the administrative record—is factually inaccurate. Rather, the reality is that the FEC *did* act on those matters, and the Court therefore lacks jurisdiction over Plaintiff's claims. The NRA Affiliates' subject matter jurisdiction challenge is briefly reiterated here because, as explained below, while the NRA Affiliates maintain that the record before the Court clearly shows that the statutory prerequisites for jurisdiction are

4

not present here, subsequent public developments have only bolstered that argument, and the information sought in the FOIA Suits will likely show, for once and all, the FEC has not only _not_ failed to act, but has actually made a final determination as to the administrative complaints such that this matter may not advance past this stage.

As explained in the NRA Affiliates' Motion to Dismiss, there are two conditions precedent that must be satisfied before this Court may exercise jurisdiction in this case under section 30109(a)(8). First, Plaintiff must show it was "aggrieved . . . by a failure of the Commission to act on [a] complaint [filed by such party under section 30109(a)(1)] during the 120-day period beginning on the date the complaint is filed[.]" 52 U.S.C. § 30109(a)(8)(A). Second, _if_ the Court in a proceeding under that first precondition "declare[s that] the failure to act is contrary to law [and directs] the Commission to conform with such declaration within 30 days," but the FEC then fails to conform with that declaration within the time so ordered, _only then_ may the Court permit a complainant to bring a private suit like this one. _Id_. § 30109(a)(8)(C).

Here, Plaintiff proceeds on the theory that it was "aggrieved" by the FEC's alleged "failure to act" on the FEC Complaints, and that the FEC failed to comply with the Court's September 30, 2021 Order to make a reason to believe determination on the FEC Complaints. Of course, neither of those conditions precedent exist in this case. The FEC _did_ sufficiently act when, after conducting reason to believe votes, the FEC determined in a split vote there was no reason to believe a violation was committed. Moreover, the FEC _did_ comply with the Court's 30-day order when the controlling Commissioners submitted their statement of reasons to the administrative record.

With this in mind, the information sought in the FOIA Suits will greatly assist the Court with this threshold jurisdictional inquiry. As a result, the Court should grant this motion for the reasons further explained below.

5

2.      **The Hawley Campaign's Motion to Dismiss**

Defendant Josh Hawley for Senate also seeks dismissal of Plaintiff's complaint under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Relevant to this Motion, Josh Hawley for Senate seeks to dismiss this case under Rule 12(b)(6) on the grounds that Plaintiff has no right to initiate this suit under 52 U.S.C. § 30109(a)(8) because the FEC did indeed act to close the underlying file, precluding Plaintiff's right of action. As explained *supra*, by filing this litigation, Plaintiff is attempting to avail itself of a rarely used provision of FECA that authorizes an administrative complainant to file suit directly against the targets of its administrative complaints, where the district court finds the FEC has failed to comply with the court's prior order "to act" on a pending administrative complaint. *See* 52 U.S.C. § 30109(a)(8)(A), (C). However, in the present matter, the FEC has indeed "acted" on the underlying administrative complaints and did so months before this Court so ordered it.

The information before this Court at the time its Memorandum Opinion was issued on October 14, 2021, and at the status conference on November 1, 2021, conclusively demonstrated that the FEC in fact had "acted on" the administrative complaints by casting "deadlocked" votes on whether there was reason to believe a violation of the law occurred. This argument, which is conceptually distinct from the NRA Affiliates' subject matter jurisdiction challenge under Rule 12(b)(1) but was also joined by the NRA Affiliates, *see* ECF No. 35-1 at 20-21, is further supported by the D.C. Circuit's recent decision in *CREW v. FEC*, 993 F.3d 880, 891 (D.C. Cir. 2021). There, the D.C. Circuit was presented with precisely the argument intimated by the FEC's counsel in *Giffords v. FEC* when they stated that the MURs remain "open" – namely, that after a deadlocked vote on a motion to find reason to believe, the FEC must still agree by four votes to dismiss the matter by closing the file – and the Circuit Court plainly rejected that argument. On April 9, 2021, seven months *before* this Court issued its Order authorizing the present lawsuit, the D.C. Circuit

specifically rejected the argument that an enforcement matter remains "open" until four Commissioners agree to "close the file," when it rejected CREW's contention that "[w]here four votes are unavailable for any option, nothing happens – neither an investigation nor a dismissal – until a bipartisan coalition of four commissioners can come to an agreement." *Id.*[2] The D.C. Circuit held this argument was "unsupported by the text of FECA" and could not "be reconciled with [its] previous cases, which have recognized the possibility of 'deadlock dismissals,' namely dismissals

---

[2] There can be no doubt that the D.C. Circuit was responding to the same argument regarding the alleged legal necessity of four Commissioners agreeing to "close the file" following a deadlocked enforcement vote. The D.C. Circuit opinion cited CREW's brief, which is instructive and reveals precisely the argument and legal theory the D.C. Circuit rejected. According to CREW:

> The FECA requires bipartisan agreement by the FEC for any enforcement action, including a dismissal brought about by a partisan deadlock. Where four votes are unavailable for any option, *nothing* happens – neither an investigation nor a dismissal – until a bipartisan coalition of four commissioners can come to an agreement. The FECA does not automatically dismiss cases that do not enjoy four votes to proceed. *See* 52 U.S.C. § 30106(c). Where there is a partisan deadlock on the merits that prevents any action and the declining commissioners remain intransigent, one commissioner from the other party may acquiesce in dismissal in order to submit the partisan bloc's idiosyncratic interpretations of law to judicial review. In that case, the only question which enjoys the bipartisan support of four commissioners, and thus the only position adopted by the agency, is whether the blocking commissioners' legal and factual determinations are correct. The personal belief of three commissioners that resources are better spent elsewhere (or not spent at all) or that there are other agency priorities (or none at all) is simply irrelevant: the FECA does not empower this partisan minority bloc to speak on behalf of the agency. The only bipartisan position enjoying four votes is the decision to dismiss because of a disagreement on the law and facts that prevents further agency action.

CREW Brief at 38-41, *CREW*, 993 F.3d at 891. The D.C. Circuit responded directly to this argument and rejected it thoroughly. It is the binding law of this Circuit that the FEC dismisses an enforcement case when it "deadlocks," *i.e.*, lacks four votes to find reason to believe (or probable cause) a violation occurred. "A decision to initiate enforcement, but not to decline enforcement, requires the votes of four commissioners." *Id.* "CREW's purposivist policy arguments cannot override the unambiguous text, nor can they be reconciled with our previous cases, which have recognized the possibility of 'deadlock dismissals,' namely dismissals resulting from the failure to get four votes to proceed with an enforcement action." *Id.* The FEC's position that enforcement matters remain "open" until a motion to close the file is approved by four votes is contrary to D.C. Circuit precedent, and this Court is bound to reject the FEC's position.

resulting from the failure to get four votes to proceed with an enforcement action." *Id*. The D.C. Circuit rejected precisely the same legal theory in *CREW v. FEC* as that maintained by FEC counsel during the course of the *Giffords v. FEC* litigation, and it appears from the public record that the FEC <u>never</u> notified this Court of that critical fact. The FEC's counsel appears to have mischaracterized the law to this Court when it stated in open court that the MURs remain open indefinitely in the event of a deadlocked vote even if the Commission had voted on the underlying merits. Hr'g Tr., *Giffords v. FEC*, No. 1:19-cv-1192-EGS, ECF No. 89 at 7:19-12, 9:10-14. Moreover, in recent weeks, three Commissioners—who FEC counsel is supposed to represent— have expressly stated that this same theory "misstates the law and sharply departs from the facts." *See* Ex. A at 1-2 (characterizing the position "that a deadlocked vote to close the file in a particular Matter Under Review ('MUR') keeps the matter open perpetually—even where the Commission has voted on all the underlying merits," as a "thin fiction" and an "unsupportable" assertion).

Under D.C. Circuit precedent, the deadlocked votes had the legal effect of dismissing the administrative complaints. *See CREW v. FEC*, 993 F.3d at 891(referring to "'deadlock dismissals,' namely dismissals resulting from the failure to get four votes to proceed with an enforcement action," and rejecting the view that four votes are required to dismiss a complaint following a deadlocked enforcement vote). This Court's characterization of the FEC's 2-3 vote on February 23, 2021 "reject[ing] a motion to close the enforcement matters, *and thereby dismiss Plaintiff's administrative complaints*" was inconsistent with the D.C. Circuit's holding in *CREW v. FEC*. Memorandum Opinion at 10, *Giffords v. FEC*, No. 1:19-cv-01192-EGS (Oct. 14, 2021). Under that precedent, the FEC's substantive votes that deadlocked, and thereby failed to find reason to believe by the required four votes, had the legal effect of dismissing the administrative complaints. When the Commissioners subsequently refused to close the file, the agency unlawfully failed to

complete a ministerial task which led to violations by the FEC of the statutory requirement that it make public "a determination that a person has not violated" the Federal Election Campaign Act. 52 U.S.C. § 30109(a)(4)(B)(ii); 11 C.F.R. § 111.20 (a). The controlling block of FEC Commissioners themselves characterize the position taken by FEC counsel before this Court in *Giffords v. FEC*, *i.e.*, that the administrative complaints remained "open" and were not legally dismissed, as a "thin fiction" and contrary to D.C. Circuit precedent. *See* Ex. A at 1-2.

### D.    Defendants' Efforts to Access the FEC's Administrative Record Via Freedom of Information Act Requests.

One consequence of the FEC's continued misrepresentations to the administrative respondents (including Defendants), the public, and this Court is that the administrative record for the corresponding MURs still has not been publicly released. As a result, this Court has been deprived of the true status of the MURs. Likewise, Defendants do not have access to materials to which they are legally entitled, and which are necessary to their defense in the present case.

Indeed, while this Court previously unsealed its record in *Giffords v. FEC* following the receipt of waivers of confidentiality from the administrative respondents and limited intervention by the NRA Affiliates for the sake of unsealing the record, *see Giffords v. FEC*, ECF Nos. 77, 82, & 83, the underlying documents themselves remain unlawfully unreleased by the FEC. This includes the statement of reasons issued by the two Commissioners who voted against finding reason to believe a violation had occurred, which is controlling for purposes of judicial review. *See Campaign Legal Ctr. & Democracy 21 v. Fed. Election Comm'n*, 952 F.3d 352, 355 (D.C. Cir. 2020) ("The three 'controlling' commissioners who voted against opening an investigation issued a statement of reasons regarding their votes, which, under our case law, 'necessarily states the agency's reasons for *acting* as it did.'"); *Fed. Election Comm'n v. Nat'l Republican Senatorial*

*Comm.*, 966 F. 2d 1471, 1476 (D.C. Cir. 1992); *Democratic Cong. Campaign Comm. v. Fed. Election Comm'n*, 831 F.2d 1131, 1135 (D.C. Cir. 1987) (emphasis added).

In an effort to gain access to the FEC's concealed administrative record, Defendants sought relevant records via separate Freedom of Information Act ("FOIA") requests. Salient to this case, and especially to the pending motions to dismiss, the records sought through these FOIA Requests will, among other things, conclusively demonstrate that: (1) the FEC voted to dismiss the administrative complaints; (2) the Commissioners who voted against proceeding with enforcement issued a statement of reasons, the contents of which are controlling for purposes of judicial review; and (3) the FEC has not failed to act on the administrative complaints, but has in fact made its final determination as to those MURs. After the FEC denied the FOIA requests, each Defendant sued the FEC for violating FOIA and requested an order from the Court compelling the FEC to disclose the requested materials.

### 1.       The NRA Affiliates' FOIA Request.

The NRA Affiliates filed a FOIA Request with the FEC on November 24, 2021. NRA FOIA Suit, ECF No. 1, ¶ 19. Generally, the NRA Affiliates' request sought various records regarding FEC MURs 7427, 7497, 7524, and 7553 (all of which are included among the MURs underlying the instant suit). *Id*. Pertinent to this Motion, the NRA Affiliates sought all statements of reason on record for the MURs, any factual and legal analysis regarding the MURs, and any vote certifications regarding the MURs—all of which are collectively referenced in the NRA FOIA Suit as the "Decisional Documents." *Id*. at ¶ 2.

The FEC responded to the NRA Affiliates' FOIA Request on January 10, 2022. *Id*. at ¶ 23. The FEC produced a limited set of documents with its response, but utterly failed to disclose—or even make a determination as to the NRA Affiliates' request for—the Decisional Documents. *Id*.

at ¶¶ 23-26. Then, on February 25, 2022—more than three months after the NRA Affiliates submitted their FOIA Request, and after significant prodding by the NRA Affiliates—the FEC indicated that it had denied the NRA Affiliates' request for the Decisional Documents under FOIA Exemption 5, which is known as the "deliberative process privilege." NRA FOIA Suit, ECF. No. 1, ¶ 34.

On March 1, 2022, the NRA Affiliates filed an Appeal as to the FEC's denial of their request for the Decisional Documents. *Id*. at ¶ 35. Then, on March 30, 2022, the FEC informed the NRA Affiliates that the Commission "was unable to render an opinion on whether to approve or deny" the Appeal as to the Decisional Documents. *Id*. at ¶ 36. The FEC provided no rationale whatsoever as to the outcome of the NRA Affiliates' FOIA Appeal. *Id*. Apparently, the FEC was unable to agree whether the NRA Affiliates are entitled to the Decisional Documents under FOIA—documents that, as a direct result of the Court's unsealing of the record in *Giffords v. FEC*, *see* ECF No. 35-1, at 16 (quoting FEC Counsel's representations to this Court during the status conference held on November 1, 2021), and as explained throughout the parties' Rule 12 briefing in this case, we all know to include vote certifications pertaining to the MURs, as well as the statement of reasons submitted by the two controlling Commissioners who voted to dismiss the administrative complaints underlying both *Giffords v. FEC* and this case. *See* NRA FOIA Suit, ECF No. 1, ¶¶ 36-39.

The NRA Affiliates commenced their FOIA Suit against the FEC on April 12, 2022. *See generally The National Rifle Association of America Political Victory Fund et al. v. Federal Election Commission*, 1:22-cv-01017. That suit was designated as a "Related Case" to the instant matter and assigned to this Honorable Court. The FEC filed its Answer on May 18, 2022, *see id.*, ECF No. 14, and the parties submitted a Joint Status Report on June 17, 2022. *Id.*, ECF No. 17.

While those parties await further direction from the Court, the next phase of that case will almost certainly entail some combination of the FEC supplementing its response to the NRA Affiliates' FOIA Request, as well as cross motions for summary judgment as to the FEC's unlawful withholding of the Decision Documents—the latter being an exercise that, as explained further below, three of the six Commissioners recently admitted that the NRA Affiliates should win.

## 2.    The Hawley Campaign's FOIA Request.

The Hawley Campaign filed a FOIA request with the FEC on November 23, 2021. *See* Complaint Exhibit A, *Josh Hawley for Senate v. FEC*, No. 1:22cv1275 (D.D.C. May 10, 2022). This request sought documents related to the FEC's consideration of the administrative complaints underlying the present litigation. *Id*. Specifically, the Hawley Campaign requested records of votes cast by FEC Commissioners in connection with any and all of the following administrative enforcement matters: MUR 7427; 7497; 7621; 7524; 7553; 7558; 7560; 7621; 7654; and *Giffords v. FEC*, 1:19-cv-01192. *Id*. In addition, the Hawley Campaign requested copies of any Statements of Reasons prepared by FEC Commissioners in connection with any and all of the following enforcement matters: MUR 7427; 7497; 7621; 7524; 7553; 7558; 7560; 7621; 7654; and *Giffords v. FEC*, 1:19-cv-01192. *Id*.

On January 7, 2022, the FEC responded to the Hawley Campaign's FOIA Request with six pages of redacted documents. *See* Complaint Exhibit D, *Josh Hawley for Senate v. FEC*, No. 1:22cv1275 (D.D.C. May 10, 2022). The FEC disclosed one additional document on March 25, 2022. *See* Complaint Exhibit E, *Josh Hawley for Senate v. FEC*, No. 1:22cv1275 (D.D.C. May 10, 2022). The FEC's two responses to the Hawley Campaign's FOIA Request explained that the agency was "withholding 32 pages of materials under FOIA Exemptions 3(A) and 5, which consist

of vote certifications and a statement of reasons in MURs 7427, 7497, 7621, 7524, 7553, 7558, 7560, 7621, and 7654." *Id*.

The Hawley Campaign filed an administrative appeal on March 30, 2022, to seek consideration by the Commissioners of the FEC's improper withholding of responsive documents, and to request that the Commissioners direct all responsive documents be produced. *See* Complaint at ¶ 3, *Josh Hawley for Senate v. FEC*, No. 1:22cv1275 (D.D.C. May 10, 2022). On April 27, 2022, the FEC informed the Hawley Campaign that "[u]pon review of your FOIA appeal, the Commission was unable to render an opinion on whether to approve or deny the appeal by a majority vote." *Id*. at ¶ 4. In other words, the Commissioners themselves disagree on whether the Hawley Campaign's FOIA request must be granted.

The Hawley Campaign filed a second request under FOIA seeking records pertaining to the FEC's divided vote on the administrative appeal. In response, the FEC provided two vote certifications. First, on April 26, the Commissioners voted 3-3 to "[p]artly grant the Freedom of Information Act appeal." Commissioners Cooksey, Dickerson, and Trainor voted affirmatively for the motion, and Commissioners Broussard, Walther, and Weintraub dissented. Two days later, the Commissioners voted 3-3 to provide the vote certification from April 26 to the Hawley Campaign. Again, Commissioners Cooksey, Dickerson, and Trainor voted affirmatively for the motion, and Commissioners Broussard, Walther, and Weintraub dissented. Thus, on April 26, the three Commissioners who have refused to close the file in these matters voted against the Hawley Campaign's FOIA appeal, thereby blocking access to the enforcement votes and documents ultimately at issue in this matter, and then on April 28, those same three Commissioners voted to prevent the Hawley Campaign from even seeing the details of that vote. The Hawley Campaign was forced to file a second FOIA request to find out how the Commissioners voted.

As a result of the Court's unsealing of the record in *Giffords v. FEC* following the submission of waivers of confidentiality by all administrative respondents, the dates and results of votes taken in connection with the underlying MURs are now known to the public. *Giffords v. FEC*, No. 1:19-cv-1192-EGS. However, three FEC Commissioners have repeatedly acted to block access to materials related to those votes, and even voted to hide a recent effort to do so. Similarly, it is now known to the public that the two Commissioners who voted to dismiss the administrative complaints provided the legally controlling statement of reasons for the administrative record on October 26, 2021, but three Commissioners refuse to provide the Hawley Campaign with a copy of that statement of reasons in response to its FOIA Request.

The Hawley Campaign filed a Complaint for Declaratory and Injunctive Relief against the FEC on May 10, 2022, challenging the FEC's improper withholding of responsive records. Complaint, *Josh Hawley for Senate v. FEC*, No. 1:22cv1275 (D.D.C. May 10, 2022). The documents that are being improperly withheld by the FEC (as a result of the votes of three Commissioners) are essential to the Hawley Campaign's defense in the present litigation. These documents will demonstrate that the FEC has in fact "acted" on the administrative complaints, that a legally controlling statement of reasons has been withheld from this Court, and that the statutory preconditions for this lawsuit have not been met. Taken together, the materials sought will make clear that this Court's Order authorizing Plaintiff to file this lawsuit was issued on the basis of the FEC counsel's misstatements of law and sharp departure from the facts in *Giffords v. FEC* as to the significance of a vote to close the file. *See* Ex. B at 2.

### E.   Three Commissioners Publicly Acknowledged the FEC's Deceptions.

#### 1.   The May 13, 2022 Statement of Commissioners Dickerson, Cooksey, and Trainor regarding Concluded Enforcement Matters.

On May 13, 2022, three Commissioners issued a statement detailing the FEC's continued deceptions in a series of enforcement matters, and explained publicly that their three colleagues have "refuse[d] to close the file" in "eight enforcement matters" in which "the Commission took *final* votes on the merits of these complaints more than a year ago . . . and statements of reasons have been included in the file by the commissioners declining to move forward." Exhibit A, Statement of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III Regarding Concluded Enforcement Matters (May 13, 2022) at 1, 2 (emphasis added). The Commissioners state with absolute clarity that "the Commission has already passed judgment on the entirety of the merits in these matters and has explained its reasoning," it "has considered each of those MURs and has taken votes fully resolving their substance," and "has concluded its deliberations" in these matters. *Id*. at 3, 4, 6.

As the Commissioners explain, "[l]awsuits have been filed against the Commission for 'failing to act' even though we have, in fact, acted. We have *affirmatively misled* respondents by claiming these matters remain pending when they are concluded. *And our actions have been intentionally shielded from both judicial and public review*." *Id*. at 1 (emphasis added). On information and belief, the administrative complaints that prompted the present litigation are among those referenced in the Commissioners' Statement of May 13, 2022.

The records sought by the Defendants under FOIA, and which are the subject of the FOIA Suits, are not only essential to the Defendants' defense of the present lawsuit, but will provide the Court with clear evidence that the FEC deceived the Court in *Giffords v. FEC* as to the significance of votes to close the file, as well as the fact that the FEC did indeed act on Plaintiff's administrative

15

complaints. Accordingly, the Court's Order in *Giffords v. FEC* authorizing Plaintiff to file the present lawsuit, which was premised on those deceptions, does not operate to grant this Court jurisdiction over this case.

      2.      <u>The June 28, 2022 Statement of Commissioners Dickerson, Cooksey,</u>
               <u>and Trainor regarding FOIA Litigation.</u>

Even more recently—on June 28, 2022—three Commissioners issued a written statement detailing the FEC's continued deceptions as to several FOIA matters, including the two FOIA Suits upon which an abeyance is sought here. *See* Statement of Chairman Allen J. Dickerson and Commissioners Sean J. Cooksey and James E. "Trey" Trainor, III, Regarding Freedom of Information Act Litigation (June 28, 2022), attached hereto as Exhibit B. There, and in express reference to the movants' respective FOIA Suits, the Commissioners state that "[t]he Commission's arguments for refusing to release the full records are wrong and do not reflect the views of a majority of the commissioners." *Id*. at 1. The Commissioners continued, stating that "because the vote certifications and statements of reasons for these complaints are neither predecisional nor deliberative, and because there is no foreseeable harm that could result from their release to these parties, FOIA requires the Commission to produce them." *Id*. Simply put, half of the Commission has expressly taken the position that "[t]he plaintiffs in these [FOIA] actions—and similarly situated plaintiffs in the future—deserve to prevail under the law." *Id*.

In fact, the Commissioners' statement indicates in clear and certain terms that, despite Plaintiff's contention otherwise, the FEC did indeed act on the administrative complaints upon which this suit is based. The Commissioners' unequivocal statement that "both the [vote] certifications and statements [of reason] reflect final agency action" sounds the death knell for any notion that this Court has jurisdiction over this case based on the now clearly false idea that the

FEC failed to act on the administrative complaints here. *Id*. at 3. The Commissioners continued, removing any doubt as to the status of the MURs at issue in this case:

> By their very nature, statements of reasons signed and filed by commissioners are not predecisional. Some might argue, however, that vote certifications could present a closer call. Whatever the merits of that argument, at present, a court need not decide whether all vote certifications are subject to disclosure under FOIA. For purposes of these cases, it is sufficient to say that a vote certification resulting in a statement of reasons explaining a controlling-commissioner vote is subject to such disclosure.

*Id.*, at 3. The Commissioners further indicated that "the Commission has, for all relevant purposes, disposed of the matter[s]," *id*., and that "[t]here is simply no credible argument that the Commission's prior votes and other actions with respect to that underlying complaint [in the corresponding MURs] are still predecisional or deliberative when the Commission has abandoned any further consideration of its merits." *Id*. at 4.

The only logical and reasonable interpretations of the Commissioners' Statement are that the FEC has fully disposed of the MURs on which the current case is based, the Movants are entitled to the decisional documents such as the vote certifications and statement of reasons sought in their FOIA Requests, and they are highly likely to prevail in the FOIA Suits.

## II. ARGUMENT

This Court should hold this case in abeyance pending resolution of the FOIA Suits because resolution of those suits will inform the course of this case, affect the outcome of this litigation, and conserve judicial and party resources. Unearthing documents such as the statement of reasons and unredacted vote certifications will greatly assist the Court's consideration of the Defendants' pending motions to dismiss, which directly pertain to threshold jurisdictional questions in this case. If the case is not held in abeyance, it would proceed on knowingly incomplete facts and information, thereby resulting in a considerable waste of judicial and party resources.

If this case proceeds to any sort of fact-finding stage, with the currently-existing, but wrongfully concealed, statement of reasons becoming public *later*, those proceedings would all have been for nothing. Under that scenario, Plaintiff's recourse would then shift to challenging that decision (*i.e.*, the statement of reasons, which serves as the Commission's decision as to the underlying administrative complaints for the sake of judicial review—assuming it is even subject to judicial review), rather than proceeding on a clean slate as if the FEC has not taken final agency action on those administrative complaints. Assuming that the documents sought in the FOIA Suits support Defendants' arguments that the FEC has not only acted on the MURs, but has made a final determination as to those matters, then this Court indeed lacks subject matter jurisdiction in this case—an issue that should be decided before this case goes any further. *See, e.g., Basardh v. Gates*, 543 F.3d 1068 (D.C. Cir. 2008) (granting abeyance where separate proceedings *might* demonstrate that district court lacked jurisdiction over instant case).

As the Supreme Court explained:

the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. N. Am. Co.*, 299 U.S. 248, 254-255 (1936). In considering a stay or abeyance, courts must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Belize*, 668 F.3d 724, 732-33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254-55). "[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Hisler v. Gallaudet University*, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (cleaned up).

That is precisely the case here, except the independent proceedings (*i.e.*, the FOIA Suits) do not just bear upon this case—they appear likely to result in the disclosure of information that will assist the Court in disposing of this case once and for all. Here, three Commissioners agree with Defendants that the FEC has acted improperly in the underlying administrative matters when it, among other things, intentionally withheld vital information from the courts, and "intentionally shielded" the agency's actions "from both judicial and public review." Ex. A, R Statement 5/13/21, at 1. *See also* Ex. B, R Statement 6/28/22, at 5 ("Nevertheless, our colleagues' effort to prevent the agency from issuing its enforcement decisions, explaining those decisions to the courts, or disclosing its actions must yield to law."). This presents "a clear case of hardship or inequity in [Defendants] being required to go forward" with this case absent the information being unlawfully withheld by the FEC. *Landis*, 299 U.S. at 255. This Court's Order authorizing Plaintiff to file this lawsuit was issued after the FEC failed to fully inform this Court of relevant details regarding the FEC's consideration of the underlying administrative complaints. *See* Ex. B, R Statement 6/28/22 at 5.

Indeed, while FEC counsel notified the Court in *Giffords v. FEC* of the occurrence of certain agency votes, it did not advise the Court that three of the FEC's six Commissioners had intentionally acted to prevent administrative respondents and courts from obtaining the full administrative record in matters that the other three Commissioners considered fully adjudicated and dismissed. *See generally* Exs. A & B. Likewise, FEC counsel revealed to the Court in a hearing that the Commissioners who voted to dismiss the administrative complaints had submitted a statement of reasons to the record, but did not mention that this statement of reasons is legally controlling under D.C. Circuit precedent. Hr'g Tr. at 6:11-23; 8:10-14. In representing to the Court that these administrative complaints are still "open," which is apparently contrary to the intent of

the Commissioners who issued the legally-controlling statement of reasons disclosed at the November 1, 2021 status conference, *see* Ex. B at 3 (stating that "both the vote certifications and statements [of reason] reflect final agency action"), FEC counsel sided with the three Commissioners whose position is contrary to clear D.C. Circuit precedent and otherwise unsupported by law.

"In determining whether to grant a stay, 'the court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side.'" *Feld Entm't, Inc. v. ASPCA*, 523 F. Supp. 2d 1, 3 (D.D.C. 2007) (quoting *Gordon v. Fed. Deposit Ins. Corp.*, 427 F.2d 578, 580 (D.C. Cir. 1980)). Here, the balance of equities clearly favors granting an abeyance. The point is simple: allowing this case to proceed beyond the motion to dismiss stage without the benefit of the statement of reasons and unredacted vote certifications, which are likely to further support the arguments that the Court lacks jurisdiction over this case and that Plaintiff lacks a right to initiate this suit, will harm Defendants by permitting unnecessary proceedings such as discovery, motions for summary judgment, or even trial.

Meanwhile, *Giffords v. FEC*, *Giffords v. NRA*, and the Defendants' two FOIA lawsuits, at bottom, stem from the FEC's inequitable conduct. First, it appears that three Commissioners engaged in, and continue to engage in, conduct that is contrary to FECA and D.C. Circuit precedent by "intentionally shield[ing the FEC's actions] from both judicial and public review." Ex. A [R Statement, 5/13/22, at 1]. Second, in "defending" the agency in *Giffords v. FEC*, FEC counsel advanced the legal theories of the three Commissioners whose position *lost* when the Commissioners voted on the underlying administrative complaints, thereby presenting the views not of the legally controlling group of Commissioners, but of the non-legally controlling group. FEC counsel represented to this Court that the MURs were still "open" when, in fact, the FECA

and D.C. Circuit precedent considered them closed. *Cf.* Ex. A, at 2 (Republican Commissioners rejecting same position, *i.e.*, "that a majority of the Commission must vote to close a file in order to conclude a matter.") In short, the Court's Order authorizing Plaintiff Giffords to file the present lawsuit was improperly obtained through the FEC's misstatements of law and sharp departure from the facts. See Ex. B at 2. Third, the FEC's split-vote denials of the Defendants' two FOIA requests also rested improperly on the legally incorrect claim that the MURs remain "open."

For their part, Plaintiff has benefitted from the FEC's continuing misconduct, while the Movants have suffered harm by, among other injury, being named as defendants in this suit. Equity demands that Defendants have the opportunity to obtain the documentary evidence that is known to exist and would demonstrate the FEC's lack of candor, gamesmanship, and failure to present a full defense in *Giffords v. FEC* in furtherance of the Weintraub Scheme and a legal theory that was rejected by the D.C. Circuit. *See CREW v. FEC*, 993 F.3d at 891. Certain members of the FEC have acted to prejudice administrative respondents (including the Defendants) in a series of enforcement matters that were dismissed against those members' wishes. These Commissioners "have held eight MURs hostage by refusing to provide their assent to closing the file," despite the fact that the MURs have been fully adjudicated, which in turn has caused the FEC to "affirmatively mis[lead] respondents by claiming these matters remain pending when they are concluded," thereby forcing those respondents into baseless litigation because the FEC's "actions have been intentionally shielded from both judicial and public review." Ex. A at 1.

Holding proceedings in abeyance is appropriate here because doing so will promote "economy of time and effort" for the Court, counsel, and parties. *See Landis*, 299 U.S. at 255. The resolution of the FOIA Suits is highly likely to clarify and substantially affect issues raised in this litigation, including issues pertaining to the Court's subject matter jurisdiction. The Defendants'

FOIA Suits are not speculative: it is indisputable that the records sought do in fact exist, as the FEC disclosed the existence of these records in open court in *Giffords v. FEC*, *see* ECF No. 35-1, at 16 (quoting FEC Counsel's remarks during status conference held on November 1, 2021), and the existence of those records was confirmed once again by the FEC itself just last month, *see* Ex. B. The probative value of those records cannot be disputed, and those records are critical to each Defendant's defense of this matter. Judicial economy is best served by allowing outstanding questions of jurisdiction to be resolved before unnecessarily proceeding on other matters.

As courts in this District have recognized, this Court may stay an action pending resolution of independent proceedings that bear upon the case where doing so "is efficient for its own docket and the fairest course for the parties…." *IBT/HERE Emple. Representatives' Council v. Gate Gourmet Div. Ams*., 402 F. Supp. 2d 289, 292 (D.D.C. 2005) (cleaned up). In *IBT/HERE*, this Court granted a plaintiff's motion to hold a case in abeyance pending an arbitrator's decision that "may affect the parties' understanding of the scope of this case going forward, may reorient the parties' arguments, may catalyze a settlement of this matter, may moot the defendants' motion to dismiss, or may resolve the issues raised in this lawsuit in their entirety." *Id.* at 293. "If," the Court explained, "further judicial involvement is necessary after the arbitrator's decision, the court will then address those issues. Among them, perhaps, will be the defendants' motion to dismiss for lack of jurisdiction and mootness." *Id*. The same can be said here, where the records sought in the FOIA Suits will undoubtedly aid the Court in determining significant threshold questions raised in Defendants' motions to dismiss, including the unavoidable question of subject matter jurisdiction.

At issue in the Defendants' two FOIA lawsuits is whether the FEC may withhold records pertaining to the underlying enforcement matters on the basis of deliberative privilege. The availability of this claim of privilege to the FEC may turn, at least in part, on whether the

enforcement matters have been concluded or remain open. As half the Commission explained in a written public statement just last month, the FEC's reliance on the deliberative privilege likely fails because "the vote certifications and statements of reasons for these complaints are neither predecisional nor deliberative, and because there is no foreseeable harm that could result from their release to these parties." Ex. B at 1. Likewise, if the matters are legally concluded as a result of the deadlocked votes, as D.C. Circuit precedent says they are, then the FECA requires that most, if not all, of the requested records must be placed on the public record and the FEC cannot withhold those documents from the Defendants on the basis of deliberative privilege. The Court could also determine more narrowly that the FEC cannot withhold records where all administrative respondents have filed waivers of confidentiality. In this scenario, Defendants would still be entitled to the withheld records and those records will demonstrate that the FEC has voted on and fully concluded its consideration of the matters.

In any event, the documents sought in the FOIA Suits will shed imperative light on questions raised in the pending motions to dismiss. Those documents will inform this Court's analysis as to whether the FEC acted on the MURs when it held reason to believe votes and the controlling Commissioners submitted their statement of reasons, which the controlling Commissioners subsequently confirmed they view as the final disposition of these MURs, and which would mean this Court lacks subject matter jurisdiction over this case. Likewise, the documents sought in the FOIA Suits will also shed additional light on whether the enforcement matters were earlier concluded as a matter of law when the Commissioners deadlocked. The FEC did *not* fail to act, could *not* have failed to comply with the Court's September 30, 2021 Order to take action, and therefore—despite the FEC's failure to apprise the Court of the true and complete state of affairs at that time—the conditions precedent for authorizing a private suit under section 30109(a)(8)(C) were not present when Plaintiff received the green light to proceed with this case.

Judicial economy is thereby served by staying proceedings in the present litigation until the FOIA

Suits are resolved. *See Nat'l Shopmen Pension Fund v. Folger Adam Sec., Inc.* 274 B.R. 1, 3

(D.D.C. 2002) ("Litigating essentially the same issues in two separate forums is not in the interest

of judicial economy or in the parties' best interests regarding time, cost, and effort.").

### III. CONCLUSION

For the foregoing reasons, the Movants respectfully request that this Court hold this case

in abeyance pending the resolution of the FOIA Suits.

Dated: July 29, 2022                              Respectfully submitted,

DICKINSON WRIGHT PLLC                    HOLTZMAN VOGEL BARAN
                                         TORCHINSKY & JOSEFIAK, PLLC
/s/ Charles R. Spies
Charles R. Spies, Bar ID: 989020         /s/ Jason Torchinsky
1825 Eye Street, N.W., Ste 900           Jason Torchinsky, Bar ID: 976033
Washington, D.C. 20006                   J. Michael Bayes, Bar ID: 501845
(202) 466-9654                           Jessica F. Johnson, Bar ID: 976688
Facsimile: (844) 670-6009                Dennis W. Polio, Bar ID: 198054
cspies@dickinsonwright.com               2300 N Street, NW, Ste 643A
                                         Washington, D.C. 20037
Robert L. Avers, Bar ID: MI0083          (202) 737-8808
350 S. Main Street, Ste 300              Fax: (540) 341-8809
Ann Arbor, MI 48104                      jtorchinsky@holtzmanvogel.com
(734) 623-1672                           mbayes@holtzmanvogel.com
ravers@dickinsonwright.com               jessica@holtzmanvogel.com
                                         dwpolio@holtzmanvogel.com
*Attorneys for Defendants the National Rifle*
*Association of America & the National Rifle*   *Attorneys for Defendant Josh Hawley for*
*Association of America Political Victory*       *Senate*
*Fund*


### CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2022, I caused a true and correct copy of the foregoing

document to be served upon all counsel of record registered with the Court's ECF system, by

electronic service via the Court's ECF transmission facilities.

/s/ Jason Torchinsky