## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GIFFORDS, | |
| *Plaintiff*, | |
| v. | Case No. 1:21-cv-2887-LLA |
| NATIONAL RIFLE ASSOCIATION OF AMERICA POLITICAL VICTORY FUND, *et al.* | Defendant Josh Hawley for Senate's Motion to Dismiss |
| *Defendants*. | |

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Josh Hawley for Senate, by and through undersigned counsel, hereby moves to dismiss Plaintiff's Complaint in the above-captioned matter. Plaintiff's Complaint should be dismissed because Plaintiff lacks Article III standing to maintain this lawsuit and because Plaintiff fails to state a claim. A supporting memorandum of points and authorities and a proposed order accompany this motion.

Respectfully submitted,

*/s/Jason Torchinsky*
Jason Torchinsky (DC Bar No. 976033)
J. Michael Bayes (DC Bar No. 501845)
Caleb Acker (DC Bar No. 900003291)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
2300 N Street NW, Suite 643A
Washington D.C. 20037
Phone: (202) 737-8808
Fax: (540) 341-8809
Email: jtorchinsky@holtzmanvogel.com
mbayes@holtzmanvogel.com
cacker@holtzmanvogel.com

*Attorneys for Defendant Josh Hawley for Senate*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system on March 7, 2025.


*/s/ Jason Torchinsky*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GIFFORDS, | |
| *Plaintiff*, | |
| v. | Case No. 1:21-cv-2887-LLA |
| NATIONAL RIFLE ASSOCIATION OF AMERICA POLITICAL VICTORY FUND, *et al*. | |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT JOSH HAWLEY FOR SENATE'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 4

   I.   PLAINTIFF LACKS STANDING TO BRING ITS CLAIMS AGAINST JOSH
       HAWLEY FOR SENATE. ................................................................................... 4

   II.  THE FEC ACTED IN THIS CASE, RENDERING THIS CITIZEN SUIT VOID AB
       INITIO. ................................................................................................................. 10

     A.  Statutory and FEC Voting Background ........................................................ 11

     B.  The D.C. Circuit's Decisions in *45Committee* and *Heritage Action* ............... 14

     C.  Application of *45Committee* To This Case .................................................... 16

CONCLUSION ................................................................................................................. 18

CERTIFICATE OF SERVICE ......................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*All. for Democracy v. FEC*,
   362 F. Supp. 2d 138 (D.D.C. 2005) ........................................................................10

*Campaign Legal Ctr. & Democracy 21 v. FEC* ,
   952 F.3d 352 (D.C. Cir. 2020) ...............................................................................10

*Campaign Legal Ctr. v. 45Committee, Inc.*,
   118 F.4th 378 (D.C. Cir. 2024) ...........................................................1, 4, 14, 15

*Campaign Legal Ctr. v. 45Committee, Inc.*,
   666 F. Supp. 3d 1 (D.D.C. 2023) ....................................................................15, 16

*Campaign Legal Ctr. v. FEC*,
   507 F. Supp. 3d 79 (D.D.C. 2020) ........................................................................10

*Campaign Legal Ctr. v. Heritage Action for Am.*,
   No. 23-7107, 2025 U.S. App. LEXIS 1069 (D.C. Cir. Jan. 15, 2025) .....................18

*Chatman v. U.S. DOD*,
   270 F. Supp. 3d 184 (D.D.C. 2017) .......................................................................11

*Common Cause v. FEC*,
   108 F.3d 413 (D.C. Cir. 1997) ............................................................................4, 5

*Crossroads Grassroots Policy Strategies v. FEC*,
   788 F.3d 312 (D.C. Cir. 2015) ...............................................................................13

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ...........................................................................................8, 9

*FEC v. Akins*,
   524 U.S. 11 (1998) ..................................................................................................9

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ................................................................................................5

*Gottlieb v. FEC*,
   143 F.3d 618 (D.C. Cir. 1998) ............................................................................6, 7

*Heritage Action for Am. v. FEC*,
   682 F. Supp. 3d 62 (D.D.C. 2023) .........................................................................14

*In re Sealed Case*,
   223 F.3d 775 (D.C. Cir. 2000) ...............................................................................12

*Nader v. FEC*,
  725 F.3d 226 (D.C. Cir. 2013) ..........................................................................7

*Pub. Citizen, Inc. v. FERC*,
  839 F.3d 1165 (D.C. Cir. 2016) ........................................................................13

*Shays v. FEC*,
  414 F.3d 76 (D.C. Cir. 2005) ............................................................................6

*Strumsky v. Wash. Post Co.*,
  842 F. Supp. 2d 215 (D.D.C. 2012) ..................................................................11

*TransUnion L.L.C. v. Ramirez*,
  594 U.S. 413 (2021) ..........................................................................................4

*United States ex rel. Scott v. Pac. Architects & Eng'rs (PAE), Inc.*,
  270 F. Supp. 3d 146 (D.D.C. 2017) ..................................................................11

**Statutes**

52 U.S.C. § 30106 ................................................................................................12

52 U.S.C. § 30109 ................................................................1, 2, 3, 4, 10, 11, 12, 13, 16, 17

52 U.S.C. § 30116 ................................................................................................4

52 U.S.C. § 30118 ................................................................................................7

**Other**

11 C.F.R. § 109.21 ..............................................................................................4

11 C.F.R. § 111.7 ................................................................................................13

11 C.F.R. § 111.9 ................................................................................................13

26 C.F.R. §§ 1.501 -1(a) ....................................................................................7

## INTRODUCTION

Plaintiff's Amended Complaint should be dismissed for two alternative reasons. *First*, Plaintiff's Amended Complaint should be dismissed without prejudice for lack of standing. Plaintiff attempts to invent what can only be described as third-party political competitor organizational standing, in which (1) a nonprofit organization that is not a candidate committee (2) must divert resources (3) to its sister PAC organization (4) to give contributions to its supported candidate committees (5) for the purpose of helping those candidates defeat other candidates (6) that are advantaged through allegedly illegal conduct (7) that the FEC refuses to prosecute. There is simply no basis for this.

*Alternatively*, because the Federal Election Commission acted in the underlying matter in conformance with the district court's order, as established by the holding of *Campaign Legal Ctr. v. 45Committee, Inc.,* 118 F.4th 378, 380 (D.C. Cir. 2024), Plaintiff's claim fails as a matter of law. See 52 U.S.C. § 30109(a)(8)(A), (C). It should therefore be dismissed with prejudice on that ground.

For these reasons, this Court should grant Defendant Josh Hawley for Senate's Motion to Dismiss.

## BACKGROUND

The Court's unredacted Memorandum Opinion of October 14, 2021, sets forth the timeline of FEC action in the underlying administrative complaints. Plaintiff Giffords, along with the Campaign Legal Center, filed four administrative complaints (MURs 7427, 7497, 7524, and 7553) from July 16, 2018 to December 7, 2018. Mem. Op., *Giffords v. FEC*, No. 1:19-cv-1192 (D.D.C. Oct. 14, 2021), ECF No. 88 at 5 (the "Oct. 14th Mem. Op."). These "administrative complaints each alleged that two National Rifle Association of America ('NRA') entities, the NRA Political

Victory Fund ('NRA-PVF') and the NRA Institute for Legislative Action ('NRA-ILA'), made unlawful contributions to then President Trump's presidential campaign and to several Senate campaigns." *Id*. at 6. The FEC received written responses from the targets of the four complaints from September 2018 to February 2019. *Id*. at 7. The FEC's General Counsel submitted its First General Counsel's Report to the Commissioners on May 10, 2019. *Id*. at 8. This document "made specific recommendations in each of the four MURs addressed, including whether the Commission should find reason to believe violations of FECA had occurred and what if any further actions should be taken." *Id*. The General Counsel's recommendations were scheduled for consideration in executive session on July 9, 2019. However, on July 8, 2019, one Commissioner recused himself, depriving the FEC of a four-vote quorum to consider the complaints. *Id*. at 8–9. Except for a one-month period in mid-2020, the FEC was without a quorum until December 2020. *Id*. at 9.

During January and February 2021, the Commissioners cast multiple votes on the question of whether there was reason to believe a violation of FECA occurred in the underlying administrative complaints. The Commissioners first considered the administrative complaints on January 26, 2021, and voted on a motion to find reason to believe a violation occurred in MURs 7427 and 7497 on February 9, 2021. This motion failed on a 2-3 vote. *Id*. On February 23, 2021, "the FEC held a series of votes related to the four administrative matters." *Id*. "By a vote of 3-2, the FEC failed to find reason to believe violations occurred. […] By a vote of 2-3, the FEC also failed to find no reason to believe violations occurred." *Id*. "And by a vote of 2-3, the FEC rejected a motion to close the enforcement matters." *Id*. at 9–10. Despite being deadlocked and lacking the votes to pursue the complaints further, the failed 2-3 vote to "close the file" in the enforcement

matters left the complaints in administrative limbo, and neither the Plaintiffs nor the subjects of the administrative complaints were notified of the FEC's votes.

On April 24, 2019, Plaintiff in the related lawsuit filed a complaint against the FEC on the grounds that it was "aggrieved" by the FEC's alleged failure to act on its administrative complaints within the above-referenced 120-day period. The district court issued the following order on September 30, 2021: "**ORDERED** that, pursuant to 52 U.S.C. § 30109(a)(8)(C), Defendant [FEC] conform to this Order within 30 days of the entry of this Order by making the reason-to-believe determination set forth in 52 U.S.C. § 30109(a)(2)." Order, *Giffords v. FEC*, No. 1:19-cv-1192 (D.D.C. Sept. 30, 2021), ECF No. 71.

The FEC had, in fact, already held multiple votes on "making the reason-to-believe determination" months prior, along with the vote to close the file. Still, within 30 days of the above-referenced order, on October 26, 2021, the FEC considered the complaints again and held another vote to "close the file" in MURs 7427, 7497, 7524, 7553, and 7621. This vote failed by a vote of 2-3.[1] Also on October 26, 2021, the Commissioners who previously voted to find "no reason to believe," and who had repeatedly voted to close the file, submitted a statement of reasons for the administrative record, and that statement of reasons was released publicly on December 23, 2021.

The district court in *Giffords v. FEC* authorized the filing of a "citizen suit" pursuant to 52 U.S.C. § 30109(a)(8)(C) on November 1, 2021, notwithstanding the evidence before the court of the FEC's votes on motions to find reason to believe and to close the file, both before the court issued the order to conform of September 30, 2021, *and* within 30 days of that order. Subsequent

---

[1] On January 11, 2022, the FEC held another vote to "close the file" in MURs 7427, 7497, 7524, and 7553; this vote failed 2-3. Finally, on August 29, 2022, following the nomination and confirmation of a new Commissioner, the FEC voted 4-1 to close the file and the FEC's administrative proceedings were formally closed.

decisions of this court and the D.C. Circuit, however, clarify that the FEC did not "fail to act" for purposes of Section 30109(a)(8)(A), and the FEC's vote of October 26, 2021, constituted conformance with the court's order of September 30, 2021.

Plaintiff filed its original complaint in this citizen suit on November 2, 2021, suing Defendant Josh Hawley for Senate and the other Defendants, alleging that Hawley for Senate accepted excessive in-kind contributions in 2018 in violation of 52 U.S.C § 30116(a)(2)(A) and failed to report contributions in 2018 in violation of 52 U.S.C § 30104(b)(4), 11 C.F.R. § 109.21(b). The Defendants moved to dismiss. The case was reassigned and subsequently stayed on February 13, 2024 "pending resolution of Campaign Legal Center v. 45Committee, Inc., D.C. Cir. No. 23-7040." On October 8, 2024, the D.C. Circuit issued its opinion. *Campaign Legal Ctr. v. 45Committee, Inc*., 118 F.4th 378 (D.C. Cir. 2024). On December 17, 2024, the Court lifted the stay in this case, denied the motions to dismiss without prejudice to new briefing, and ordered new briefing "[i]n light of Campaign Legal Center v. 45Committee, Inc., 118 F.4th 378 (D.C. Cir. 2024), and other legal developments since the filings of the original motions to dismiss." Subsequently, Plaintiff filed an Amended Complaint within the new schedule, and Defendant now files this new motion to dismiss.

## ARGUMENT

## I.   PLAINTIFF LACKS STANDING TO BRING ITS CLAIMS AGAINST JOSH HAWLEY FOR SENATE.

The Federal Election Campaign Act of 1971, as amended ("FECA") is an Act of Congress and cannot itself grant Article III standing. See *Common Cause v. FEC*, 108 F.3d 413, 419 (D.C. Cir. 1997) ("Section [30109(a)(8)(A)] does not confer standing; it confers a right to sue upon parties who otherwise already have standing."); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) ("Congress's creation of a statutory prohibition or obligation and a cause of action does not

relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."). Plaintiff fails to establish such standing for itself here, instead asserting injuries of other nonparties and relying on misapplications of political competitor and organizational standing theories.

The familiar requirements are: "an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Additionally, "[i]n those cases where 'a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else' it is substantially more difficult to establish injury in fact." *Common Cause*, 108 F.3d at 417 (quoting *Lujan*, 504 U.S. at 562).

Plaintiff's theory in the Amended Complaint is that it "opposed" Josh Hawley and engaged in "spending" that "was in direct political opposition" to Josh Hawley for Senate. ECF No. 81 at 8. Plaintiff alleges it "has engaged and continues to engage in legislative advocacy for positions each of the beneficiaries of the NRA, including Matt Rosendale and Josh Hawley, have opposed while in office." ECF No. 81 at 10. Finally, Plaintiff alleges it "intends to oppose future campaigns of candidates across the country, like Rosendale and Hawley, who oppose Giffords's gun safety platform[,]" and "[t]he competitive fundraising advantage that the Rosendale Campaign and Hawley Campaign enjoy over the candidates supported by Giffords as a result of the illegal contributions from the NRA forces Giffords to spend additional resources countering its opponents' illegally raised funds." ECF No. 81 at 12.

In other words, Plaintiff invokes a genre of a political competitor theory, though not one any court has recognized. Legally cognizable political competitor standing can exist in theory, see *Shays v. FEC*, 414 F.3d 76 (D.C. Cir. 2005), but that's not what this is.

In *Shays*, the D.C. Circuit held that when candidates seeking reelection would face actual electoral disadvantages as a result of the Commission's implementing regulations, the candidates had political competitor standing to challenge the regulations. *Id*. at 85. Specifically, the Article III was the "illegal structuring of a competitive environment" by the defendant FEC. *Id*. That standing obtains only when a plaintiff can "show that he personally competes in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit." *Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998) (quoting *In re U.S. Catholic Conf.*, 885 F.2d 1020, 1029 (2d Cir. 1989)). In *Shays*, the D.C. Circuit concluded its precedent "embod[ies] a principle that supports [candidates'] standing: that when regulations illegally structure a competitive environment—whether an agency proceeding, a market, or a reelection race—parties defending concrete interests (e.g., retention of elected office) in that environment suffer legal harm under Article III." 414 F.3d at 87.

But, first off, Plaintiff is not challenging the FEC's implementation of a regulation. Rather, Plaintiff is challenging the FEC's prosecutorial discretion in not punishing alleged relationships between various entities. No precedent supports the notion that a failure to prosecute entity relationships can create political competitor injury. To the contrary, *Shays* concerned when the defendants illegally structure the environment, e.g., "when agencies adopt procedures inconsistent with statutory guarantees." *Id*. at 85. The caselaw cuts against Plaintiff's suggested approach. In this circuit, plaintiffs challenging an FEC dismissal cannot establish standing solely on the theory that a plaintiff is "forced to compete" in an "illegally structured campaign environment" because

opponents are flouting election laws without suffering any consequences from the FEC. *See Nader v. FEC*, 725 F.3d 226, 228 (D.C. Cir. 2013). Similarly, Plaintiff wishes to say it has standing because the failure to prosecute forces it to divert resources.

In any case, Plaintiff remains no "competitor" for reelection and therefore has no cognizable Article III interest. It is a nonprofit that plays in the political sandbox with many other entities. But it is no candidate committee. It does not compete for the same resources as any defendant. Plaintiff does not compete for profit with any defendant. Rather, Plaintiff is "a nonpartisan, nonprofit 501(c)(4) organization . . . that is dedicated to saving lives from gun violence." ECF No. 81 at 5. Plaintiff obviously views itself subjectively as in the "arena" with the entities it listed as Defendants, but that is not the controlling standard. Plaintiff must show that it *itself* "competes in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit." *Gottlieb*, 143 F.3d at 621. Plaintiff instead asserts a genre of third-party standing, stating that it "made a $5,000 contribution to Hawley's opponent Claire McCaskill." ECF No. 81 at 8. In other words, since Plaintiff supports the *actual* competitor in the arena—Democrat candidate campaigns—standing that Claire McCaskill's campaign might have had should reverberate back onto Plaintiff. Plaintiff adduces no support for such a theory because it cannot.

As it concerns Defendant Josh Hawley for Senate, this point is only strengthened by the fact that Plaintiff is a 501(c)(4), which means it legally *is prohibited* from operating primarily to participate or intervene in political campaigns on behalf of or in opposition to any candidate, nor can it directly contribute to candidates for federal office. 26 C.F.R. § 1.501(c)(4)-1(a)(2)(i); 52 U.S.C. § 30118(a). Plaintiff simply cannot all at the same time be (1) a competitor to Defendant Josh Hawley for Senate; (2) a nonpartisan organization; and (3) legally operating as a 501(c)(4).

Third-party standing is always a hard route. That sort of standing is reserved for a "narrow class of litigants to assert the legal rights of others." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393 n.5 (2024). But even when the Supreme Court has "allowed litigants to assert the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute." *Id.* Accordingly, Plaintiff must show an injury of its own. It does not, instead stating that the candidates Plaintiff supports will suffer due to the allegedly illegal practices.

Layered onto Plaintiff's tenuous theory is yet another problem: organizational standing. The Supreme Court is more skeptical of organizational standing than individual standing. See generally *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367 (2024). There, this Court rejected a general theory that "standing exists when an organization diverts its resources in response to a defendant's actions"; but that diversion of resources can only constitute an injury when a defendant's actions "directly affected and interfered with [plaintiff's] core business activities." *Id.* at 395.

Here, Plaintiff seeks refuge within the diversion theory. See ECF No. 81 at 12 ("The competitive fundraising advantage…forces Giffords to spend additional resources countering its opponents' illegally raised funds."). Yet Plaintiff's "core business activities" are not, as it inappropriately implies in Paragraphs 41-42, diverting funds to support certain candidates or oppose other candidates. Per *FDA*, a plaintiff must allege a "similar impediment to the [Plaintiff's] advocacy businesses." *Id.* at 395. Plaintiff's core activities are advocating for gun safety. Nothing the Defendants are doing "directly affect[s]" or "interfere[]s" with Plaintiff's core advocacy work. Rather, the alleged illegal coordination arguably causes a competitor injury to *other* organizations—candidate committees that ostensibly work to support candidates that would likely

pursue policies Plaintiff advocates for. That is simply too attenuated under current standing law. All Plaintiff alleges is resource diversion to counter the alleged illegal money. But that theory would allow Plaintiff (and any other nonprofit advocacy organization) to sue any candidate in this context whose opponent Plaintiff supports, provided Plaintiff spends a single dollar contributing to the other opponent. See *FDA*, 602 U.S. at 395 ("[T]hat theory would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies.").

In short, Plaintiff's third-party political competitor organizational standing theory fails. They cannot establish any of the three parts of that, not to mention all three at the same time. For that reason alone, this Court could dismiss without prejudice.

"Informational standing" also does not establish standing. Under this theory, which like the third-party political competitor organizational standing does not lack for inventiveness, Plaintiff alleges it "uses information from FEC filing in content for its website, reports, blog posts, and social media[,]" and "[t]he failure of the…Hawley Campaign…to timely file required forms and disclosure reports deprives Giffords of information necessary to fulfill its mission and programmatic goals." ECF No. 81 at 14. But as an organization Plaintiff "must show 'far more than simply a setback to the organization's abstract social interests.'" *FDA*, 602 U.S. at 394 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982)). By its own pleadings, Giffords' alleged informational injury is a setback to its interests. Plaintiff wants to know things. That alone is not standing.

Plaintiff seeks either (i) legal determinations that previously disclosed transactions were unlawful, or (ii) information about relationships between entities for which no disclosure is statutorily required. But such theories have already been rejected in the FECA context. See *FEC*

*v. Akins*, 524 U.S. 11, 21 (1998) (A plaintiff suffers an informational injury only when it "fails to obtain information which must be publicly disclosed pursuant to a statute."); *Campaign Legal Ctr. & Democracy 21 v. FEC* ("*CLC & Democracy 21 (2020)*") 952 F.3d 352, 356 (D.C. Cir. 2020) (*per curiam*) ("The law is settled that a denial of access to information qualifies as an injury in fact where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the information would help them.").

Plaintiff does not seek new information about Josh Hawley for Senate. "[A] plaintiff lacks a cognizable informational injury where the information she seeks 'is already required to be disclosed' elsewhere and, pursuant to that obligation, 'reported in some form.'". *Campaign Legal Center. v. FEC*, 507 F. Supp. 3d 79, 84 (D.D.C. 2020) ("*CLC 2020*") (quoting *Wertheimer v. FEC*, 268 F.3d 1070, 1074–75 (D.C. Cir. 2001)). If "the plaintiffs already have access to 'everything they are entitled to under the FECA,' their alleged 'informational injury' is not cognizable injury under the FECA, sufficient to satisfy the standing requirement." *All. for Democracy v. FEC*, 362 F. Supp. 2d 138, 148–49 (D.D.C. 2005) (internal citations omitted). Plaintiff has failed to allege any facts that it seeks new information about the committee that is not already required to be disclosed and reported in some form elsewhere. Plaintiff seeks only legal determinations or information not required to be disclosed under FECA. The spending at issue has already been disclosed; Plaintiff simply wants the FEC to declare it "coordinated" and therefore determine that Defendants violated the law. Dismissal is warranted on that basis because it has not experienced informational injury granting it standing against Defendant Josh Hawley for Senate.

## II.   THE FEC ACTED IN THIS CASE, RENDERING THIS CITIZEN SUIT VOID AB INITIO.

Plaintiff's claim revolves around either of two questions: (1) whether the FEC "failed to act" for purposes of 52 U.S.C. § 30109(a)(8)(A); and/or (2) whether the FEC conformed with the

district court's order of September 30, 2021, for purposes of 52 U.S.C. § 30109(a)(8)(C). If the FEC "acted" in the first instance, and/or conformed with the court's order, then the statutory preconditions for filing a citizen suit under FECA are not satisfied and this case must be dismissed.

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is "appropriate when a complaint fails 'to state a claim upon which relief can be granted.'" *Strumsky v. Wash. Post Co.*, 842 F. Supp. 2d 215, 217 (D.D.C. 2012) (quoting Fed. R. Civ. P. 12(b)(6)). "[A] complaint must contain sufficient factual allegations that, if accepted as true, 'state a claim to relief that is plausible on its face.'" *United States ex rel. Scott v. Pac. Architects & Eng'rs, Inc.*, 270 F. Supp. 3d 146, 152 (D.D.C. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Though the Court "must liberally construe the complaint in favor of the plaintiff and must grant the plaintiff 'the benefit of all inferences that can be derived from the facts alleged,' . . . a court need not 'accept as true a legal conclusion couched as a factual allegation.'" *Chatman v. U.S. Dep't of Def.*, 270 F. Supp. 3d 184, 188 (D.D.C. 2017) (quoting *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 529, 530 (D.C. Cir. 2015)).

### A. Statutory and FEC Voting Background

FECA authorizes an administrative complainant to seek judicial review of alleged FEC inaction on an enforcement complaint in narrow, carefully prescribed circumstances. Under 52 U.S.C. § 30109(a)(8)(A), "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such party under paragraph (1), *or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed*, may file a petition with the United States District Court for the District of Columbia." Next, FECA provides

that "[i]n any proceeding under this paragraph the court may declare that the dismissal of the complaint or *the failure to act* is contrary to law, and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint." *Id.* § 30109(a)(8)(C). In the present litigation, the Plaintiff brought such an action challenging the FEC's alleged failure to act.

As the D.C. Circuit has explained, "Congress vested enforcement power in the FEC, carefully establishing rules that tend to preclude coercive Commission action in a partisan situation, where the Commission, itself statutorily balanced between the major parties … is evenly split." *In re Sealed Case*, 223 F.3d 775, 780 (D.C. Cir. 2000). The FEC is comprised of six Commissioners and "[n]o more than 3 members of the Commission … may be affiliated with the same political party." 52 U.S.C. § 30106(a)(1). FECA provides that "[a]ll decisions of the Commission with respect to the exercise of its duties and powers under the provisions of this Act shall be made by a majority vote of the members of the Commission" and specifies that "the affirmative vote of 4 members of the Commission shall be required in order for the Commission to: (i) initiate, defend, or appeal of any civil action; (ii) render an advisory opinion; (iii) develop prescribed forms and make, amend, and repeal regulations; and (iv) conduct investigations and hearings expeditiously and to report apparent violations to the appropriate law enforcement authorities. *Id.* § 30106(c); 30107(a)(6)–(9).

After the FEC receives a written complaint alleging that someone has violated the FECA, the agency's General Counsel "may recommend to the Commission whether or not it should find reason to believe that a respondent has committed or is about to commit a violation of statutes or regulations over which the Commission has jurisdiction." 11 C.F.R. § 111.7(a). The FEC will

typically vote on the General Counsel's recommendations. In order to conduct an investigation, the FEC must "by an affirmative vote of 4 of its members" determine that there is "reason to believe that a person has committed, or is about to commit, a violation of th[e] Act." 52 U.S.C. § 30109(a)(2); 11 C.F.R. § 111.9(a). "If four of the six Commissioners conclude there is reason to believe a violation was committed, a full FEC investigation commences. Conversely, if there are fewer than four votes, the FEC dismisses the administrative complaint." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 315 (D.C. Cir. 2015). Thus, if four Commissioners do *not* vote to find "reason to believe," the Commission cannot proceed with an investigation and the matter is dismissed. *See*, *e.g.*, *Public Citizen, Inc. v. FERC*, 839 F.3d 1165, 1170 (D.C. Cir. 2016) ("the statute compels FEC to dismiss complaints in deadlock situations"). FEC regulations require that "[i]f the Commission finds no reason to believe, or otherwise terminates its proceedings, the General Counsel shall so advise both complainant and respondent by letter." 11 C.F.R. § 111.9(b).

Under the FECA, when a "reason to believe" vote is not supported by four Commissioners, consideration of the matter necessarily ends.  How the formality of dismissal is occasioned when the Commissioners are deadlocked has been the subject of debate, but for purposes of this litigation, the D.C. Circuit's description of the FEC's voting process in *45Committee* is controlling. For most of the FEC's history, when the Commissioners deadlocked and there were not four votes to find "reason to believe," Commissioners recognized that the proceedings had come to an end and unanimously voted to "close the file."  This vote was an acknowledgment that no further action was possible and served to instruct agency staff to notify the parties involved of the matter's disposition and prepare the case file for placement on the public record. For a brief period that included 2021, however, certain Commissioners strategically voted against motions to "close the file" in several deadlocked cases as a way to keep the Commission's consideration of certain

complaints undisclosed so that "failure to act" citizen suits could be initiated, which is precisely what happened in this litigation. *See generally Heritage Action for Am. v. FEC*, 682 F. Supp. 3d 62, 69, 71 (D.D.C. 2023) (describing historic practice of closing the file and "evidence that certain Commissioners approached these questions purposefully and strategically"), *aff'd* No. 23-7107, 2025 U.S. App. LEXIS 1069 (D.C. Cir. Jan. 15, 2025) (unpublished per curiam opinion). The Commissioners who voted to find "reason to believe" and pursue the administrative complaints broke with longstanding agency precedent when they voted against motions to "close the file" after the Commissioners deadlocked, and the result has been years of unnecessary litigation and wasted judicial resources.

**B. The D.C. Circuit's Decisions in *45Committee* and *Heritage Action***

Per the Court's order, this memorandum addresses the holdings in *Campaign Legal Ctr. v. 45Committee, Inc.*, 118 F.4th 378 (D.C. Cir. 2024) as they pertain to the present case. The litigation in *45Committee* similarly involved multiple deadlocked reason-to-believe votes by the FEC, failed votes to close the file, and a "contrary to law" lawsuit in response. The FEC failed to appear in the lawsuit and the court entered a default judgment. *45Committee*, 118 F.4th at 384. The FEC subsequently held a reason-to-believe ("RTB") vote within thirty days of the district court's decision. *Id*. at 389–90. That RTB vote "failed to garner the four votes necessary to either find reason to believe (and thus initiate an investigation) or find no reason to believe (and thus dismiss the complaint)." *Id*. at 390. The FEC then "voted later that same day on dismissing the complaint [*i.e.*, to close the file], that vote, too, failed to gain a majority," meaning the administrative complaint remained on the agency's enforcement docket notwithstanding the failed reason-to-believe vote. *Id*.

After a citizen suit was filed against 45Committee, Inc., "the parties and the district court obtained previously unreleased records" demonstrating that "within the thirty-day period after the contrary-to-law order issued … the Commission held a reason-to-believe vote." *Id*. at 384–85. The district court "held that the vote counted as acting on the complaint, meaning the Commission *had* conformed with the contrary-to-law decision arising from a failure to act within thirty days, precluding the bringing of a citizen suit," and dismissed the citizen suit. *Id*. at 385. The district court concluded that the FEC's deadlocked reason-to-believe vote "constitute[d] agency 'action'" and was "unquestionably a conforming 'action,'" and dismissed the citizen suit. *Campaign Legal Center v. 45Committee, Inc*., 666 F. Supp. 3d 1, 6 (D.D.C. 2023).

The question on appeal was whether the FEC conformed to the court's order when it held a (failed) reason-to-believe vote? The D.C. Circuit upheld the district court's determinations and explained:

> [W]hen a complainant brings a contrary-to-law suit based on a failure by the Commission to act at all on a pending complaint, the Commission's conduct of a reason-to-believe vote would conform with a decision finding that its failure to act was contrary to law. Whether the vote succeeds or fails does not matter: a reason-to-believe vote that fails 3-3 or 0-6, or one that succeeds 4-2 or 5-1, are all equivalent for purposes of conforming with the failure-to-act decision. That is because what the contrary-to-law plaintiff claims as the reason for her "aggrieve[ment]," 52 U.S.C. § 30109(a)(8), is not the Commission's failure to vote in favor of finding reason to believe, but instead is the Commission's failure to hold such a vote at all. FECA entitles her, through a contrary-to-law action, to compel the Commission's engagement with the merits of her administrative complaint through such a vote; it does not entitle her to a particular vote outcome.

*Id*. at 391–92.

Additionally, the D.C. Circuit concluded that "the district court was nonetheless *not* bound to stick with the contrary-to-law court's conclusion that the preconditions were satisfied." *Id*. at 386 (emphasis added). The D.C. Circuit rejected the appellant's argument "that, following a contrary-to-law suit resulting from a failure to act, only a majority-supported decision can count

as conforming action." *Id*. at 390. Rather, the D.C. Circuit concluded that a taking a reason-to-believe vote constitutes conformance with the court's order "regardless of the vote's outcome." *Id*. Conforming with the court's order requires "at least some cognizable enforcement step under the statute, and holding a reason-to-believe vote counts as such a step." *Id*. In other words, the plaintiff "can compel the action that, had it been performed, would have left her without the ability to bring (or win) her contrary-to-law suit," and in a contrary-to-law suit alleging failure to act by the Commission, a reason-to-believe vote is such action. *Id*.

### C. Application of *45Committee* To This Case

The holding of *45Committee* is that even a failed reason-to-believe vote is an "act," as well as a conforming act, under 52 U.S.C. §§ 30109(a)(8)(A) and (C), respectively. In this case, the FEC responded to the district court's order to conform by voting, within 30 days of the court's order, on a motion to "close the file." During the November 1, 2021, video status conference, FEC counsel explained that the Commissioners "took the matters up in the next executive session on October 26th," and "there were no apparent changes in [their] positions." As a result, "[t]he Commissioners took an additional vote on whether to close the file. That vote did not pass. There were two in favor, three opposed and one Commissioner recused." Hr'g Tr., *Giffords v. FEC*, No. 1:19-cv-1192-EGS (D.D.C. Nov. 15, 2021), ECF No. 78 at 6-7. The remainder of the transcript suggests that the court believed the question of whether the FEC had conformed could be litigated subsequently, and FEC counsel made no effort to argue that his client had in fact conformed with the court's order by taking another vote within the required 30-day period.

Accordingly, Plaintiff has *not* satisfied the statutory preconditions for bringing this lawsuit directly against the administrative respondents. The FEC took four votes on the administrative complaints in 2021, and two more votes in 2022. A direct citizen suit may be brought only after

the District Court "declare[s] that the dismissal of the complaint or the failure to act is contrary to law," *and* the FEC fails to conform to the court's order within 30 days, pursuant to 52 U.S.C. § 30109(a)(8)(C).  Under *45Committee*, the FEC both "acted" on the administrative complaints on February 9 and 21, 2021, and conformed to the district court's order when it voted again on October 26, 2021, within 30 days of September 30, 2021. The administrative record demonstrates that the FEC "acted" on the complaints in 2021, and had *never* "failed to act" for purposes of 52 U.S.C. § 30109(a)(8)(A), but nevertheless, the FEC conformed to the district court's order by acting again in October 2021 after being ordered to do so.  Accordingly, the two statutory preconditions necessary for this litigation are not met.

The D.C. Circuit has now removed any questions that may have existed in November 2021 about the proper application of FECA to the facts at hand.  For purposes of Section 30109(a)(8)(A), the FEC did not "fail to act" on the administrative complaints.  As the Court explained, "to 'act' on a pending complaint, in this context, means to take some enforcement step recognized by the statute" while "a failure by the Commission to act at all on a pending complaint means a failure to take some cognizable enforcement step under the statute in response to the complaint.  And holding a reason-to-believe vote is such a step."  *Id*. at 391.  Under this standard, the FEC "acted" on the administrative complaints on February 9, 2021, and again on February 23, 2021 when it voted on reason-to-believe motions and a motion to close the file.  After the district court issued its order to conform, the FEC "acted" when it again considered the complaints and voted on a motion to close the file.  In *45Committee*, the D.C. Circuit construed the FEC's practice of voting to close the file when it is deadlocked as a vote to "dismiss[] a complaint without rendering a four-vote decision on its merits."  *Id*. at 382. A vote to dismiss is unquestionably a "cognizable enforcement step" that constitutes "action" for purposes of conforming with the court's order.  Under *45Committee*, the

district court's order authorizing the filing of this lawsuit is not preclusive if this court determines that authorization to file the citizen suit was erroneously granted, or that subsequent D.C. Circuit decisions now require a different result.

Following *45Committee*, the D.C. Circuit issued an unpublished *per curiam* decision in January 2025 in another matter after finding "[t]he merits of the parties' positions … so clear as to warrant summary action." As the Court explained:

> On March 25, 2022, the district court ordered the FEC to act on Campaign Legal Center's administrative complaint within 30 days. On April 7, 2022, the FEC voted on whether there was reason to believe the administrative complaint's allegations that a violation of the Federal Election Campaign Act had been committed. By holding the votes, the FEC complied with the district court's March 22, 2022 order. . . . Accordingly, the preconditions to filing a citizen suit were not satisfied. Because those preconditions are not jurisdictional, the district court's order is affirmed on the ground that Campaign Legal Center failed to state a claim.

*Campaign Legal Center v. Heritage Action for Am.*, No. 23-7107, 2025 U.S. App. LEXIS 1069 (Jan. 15, 2025) (unpublished per curiam opinion). In all relevant respects, the facts of this matter also mirror those in *Heritage Action*. In *Heritage Action*, the FEC was ordered "to act" within 30 days, complied with the court's order by considering and voting on the administrative complaint within that time frame, and thus, the preconditions for filing a citizen suit were not met and the case was dismissed for failure to state a claim. The same result should obtain here.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court grant its Motion to Dismiss.

Respectfully submitted March 7, 2025.

*/s/Jason Torchinsky*
Jason Torchinsky (DC Bar No. 976033)
J. Michael Bayes (DC Bar No. 501845)
Caleb Acker (DC Bar No. 900003291)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
2300 N Street NW, Suite 643A
Washington D.C. 20037
Phone: (202) 737-8808
Fax: (540) 341-8809
Email: jtorchinsky@holtzmanvogel.com
mbayes@holtzmanvogel.com
cacker@holtzmanvogel.com

*Attorneys for Defendant Josh Hawley for Senate*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system on March 7, 2025.


*/s/ Jason Torchinsky*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GIFFORDS,

*Plaintiff*,

        v.

NATIONAL RIFLE ASSOCIATION OF
AMERICA POLITICAL VICTORY FUND,
*et al*.

*Defendants*.

Case No. 1:21-cv-2887-LLA

**[PROPOSED] ORDER**

      Upon consideration of Defendant Josh Hawley for Senate's Motion to Dismiss, the Court

has determined that Defendant Josh Hawley for Senate's Motion to Dismiss should be, and hereby

is, GRANTED with prejudice.

      SO ORDERED this XX day of XX, 2025.

_____

[[JUDGE]]

United States District Judge