## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GIFFORDS,<br><br>　　　*Plaintiff*,<br><br>　　v.<br><br>NATIONAL RIFLE ASSOCIATION OF<br>AMERICA POLITICAL VICTORY FUND;<br><br>NATIONAL RIFLE ASSOCIATION OF<br>AMERICA INSTITUTE FOR LEGISLATIVE<br>ACTION;<br><br>MATT ROSENDALE FOR MONTANA; and<br><br>JOSH HAWLEY FOR SENATE,<br><br>　　　*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Civil Action No. 1:21-cv-02887-LLA<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT MATT ROSENDALE FOR MONTANA'S
### RULE 12(b)(1), 12(b)(2), AND 12(b)(6) MOTION TO DISMISS FOR
### FAILURE TO STATE A CLAIM AND FOR LACK OF
### <u>SUBJECT-MATTER AND PERSONAL JURISDICTION</u>

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Defendant

Matt Rosendale for Montana respectfully moves to dismiss Plaintiff's Amended Complaint with

prejudice. ECF 81. As explained in the attached memorandum, Plaintiff has failed to state a claim

because the Federal Election Commission acted on Plaintiff's administrative complaints. This

Court also lacks subject-matter jurisdiction because Plaintiff lacks standing to bring the claims

alleged. Furthermore, this Court does not have personal jurisdiction over Defendant Matt Rosen-

dale for Montana.

Dated: March 7, 2025

Chris K. Gober
D.C. Bar No. 975981
Lex Politica PLLC
14425 Falcon Head Blvd. E-100
Austin, TX 78738
(512) 354-1783
cgober@lexpolitica.com

Eric Wang
D.C. Bar No. 974038
Lex Politica PLLC
2200 Wilson Blvd.
Suite 102-72
Arlington, VA 22201
(202) 417-3528
ewang@lexpolitica.com

Respectfully submitted,

*/s/ Scott A. Keller*
Scott A. Keller
D.C. Bar No. 1632053
Lehotsky Keller Cohn LLP
200 Massachusetts Ave. NW,
  Suite 700
Washington, DC 20001
(512) 693-8350
scott@lkcfirm.com

*Counsel for Defendant*
*Matt Rosendale for Montana*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GIFFORDS, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| NATIONAL RIFLE ASSOCIATION OF | ) |
| AMERICA POLITICAL VICTORY FUND; | ) |
| | ) |
| NATIONAL RIFLE ASSOCIATION OF | ) Civil Action No. 1:21-cv-02887-LLA |
| AMERICA INSTITUTE FOR LEGISLATIVE | ) |
| ACTION; | ) |
| | ) |
| MATT ROSENDALE FOR MONTANA; and | ) |
| | ) |
| JOSH HAWLEY FOR SENATE, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT MATT ROSENDALE FOR MONTANA'S**
**RULE 12(b)(1), 12(b)(2), AND 12(b)(6) MOTION TO DISMISS FOR**
**FAILURE TO STATE A CLAIM AND FOR**
**<u>LACK OF SUBJECT-MATTER AND PERSONAL JURISDICTION</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF ALLEGATIONS ............................................................................... 3

ARGUMENT .................................................................................................................. 7

    I.   Plaintiff has failed to state claims against Defendant Matt Rosendale for Montana because Plaintiff has not satisfied the Act's preconditions to bringing this citizen suit. ................................................................................................ 8

    II.  Plaintiff lacks standing because it cannot avail itself of competitor standing and has not pleaded a sufficient informational injury. ...................................... 13

        A.    Plaintiff lacks competitor standing because (1) it has not suffered any competitive injury and (2) any such injury would not be redressable. ...........14

        B.    Plaintiff's purported informational injury is foreclosed by D.C. Circuit precedent because Plaintiff already has all the factual information to which the Act could possibly entitle it.............................................................19

    III. This Court lacks personal jurisdiction over Defendant Matt Rosendale for Montana. ................................................................................................... 22

CONCLUSION.............................................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AB PAC v. FEC,*
   2023 WL4560803 (D.D.C. July 17, 2023)..............................................................15

*Alkanani v. Aegis Def. Servs., LLC,*
   976 F. Supp. 2d 13 (D.D.C. 2014) ....................................................................3, 25

*All. for Democracy v. FEC,*
   335 F. Supp. 2d 39 (D.D.C. 2004) ........................................................................20

*All. for Democracy v. FEC,*
   362 F. Supp. 2d 138 (D.D.C. 2005) ......................................................................20

*Am. Inst. of Certified Pub. Accts. v. IRS,*
   804 F.3d 1193 (D.C. Cir. 2015) ............................................................................15

*Bigelow v. Garrett,*
   299 F. Supp. 3d 34 (D.D.C. 2018) ....................................................3, 26, 27, 28

*Buchanan v. FEC,*
   112 F. Supp. 2d 58 (D.D.C. 2000) ........................................................................17

*Campaign Legal Ctr. v. 45Committee, Inc.,*
   118 F.4th 378 (D.C. Cir. 2024)..............................................1, 7, 8, 9, 11, 12

*Campaign Legal Ctr. v. FEC,*
   31 F.4th 781 (D.C. Cir. 2022)..........................................................................21, 22

*Citizens for Resp. & Ethics in Wash v. Am. Action Network,*
   410 F. Supp. 3d 1 (D.D.C. 2019) ..........................................................................20

*Citizens for Resp. & Ethics in Wash. v. FEC,*
   401 F. Supp. 2d 115 (D.D.C. 2005) ......................................................................14

*Citizens for Resp. & Ethics in Wash. v. FEC,*
   799 F. Supp. 2d 78 (D.D.C. 2011) ........................................................................13

*Common Cause v. FEC,*
   108 F.3d 413 (D.C. Cir. 1997) ..................................................................8, 13, 19

*Crane v. N.Y. Zoological Soc'y,*
   894 F.2d 454 (D.C. Cir. 1990) ................................................................................8

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ................................................................................22, 23

*Daley v. Alpha Kappa Alpha Sorority, Inc.*,
    26 A.3d 723 (D.C. 2011) .................................................................................25

*Day v. Corner Bank*,
    789 F. Supp. 2d 150 (D.D.C. 2011) .................................................................23

*Envt'l Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*,
    355 A.2d 808 (D.C. 1976) ...............................................................................25

*Erwin-Simpson v. AirAsia Berhad*,
    985 F.3d 883 (D.C. Cir. 2021) ...................................................................23, 24

*Everett v. Nissan Motor Corp. in U.S.A.*,
    628 A.2d 106 (D.C. 1993) ...............................................................................24

*Fam. Fed'n for World Peace & Unification Int'l v. Hyun Jin Moon*,
    129 A.3d 234 (D.C. 2015) ...............................................................................25

*FEC v. Akins*,
    524 U.S. 11 (1998)......................................................................................19, 20

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)............................................................................................8

*Giffords v. FEC*,
    2021 WL 4805478 (D.D.C. Oct. 14, 2021) ......................................................1

*Gonzalez v. Internacional de Elevadores, S.A.*,
    891 A.2d 227 (D.C. 2006) ...............................................................................24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)....................................................................................22, 23

*Gottlieb v. FEC*,
    143 F.3d 618 (D.C. Cir. 1998) ...............................................2, 14, 15, 16, 17

*Gowens v. Dyncorp*,
    132 F. Supp. 2d 38 (D.D.C. 2001) ..................................................................24

*Hassan v. FEC*,
    893 F. Supp. 2d 248 (D.D.C. 2012) ................................................13, 15, 16

*Herrera v. Wyoming*,
    587 U.S. 329 (2019)....................................................................................7, 12

*Howe v. Embassy of Italy*,
    68 F. Supp. 3d 26 (D.D.C. 2014) .................................................................................8

*Inv. Co. Inst. v. United States*,
    550 F. Supp. 1213 (D.D.C. 1982) ..............................................................................26

*Jackson v. George*,
    146 A.3d 405 (D.C. 2016) .........................................................................................25

*Jeffries v. Volume Servs. Am., Inc.*,
    928 F.3d 1059 (D.C. Cir. 2019) ................................................................................14

*Jud. Watch, Inc. v. FEC*,
    180 F.3d 277 (D.C. Cir. 1999) ..................................................................................13

*Jud. Watch, Inc. v. FEC*,
    293 F. Supp. 2d 41 (D.D.C. 2003) ......................................................................19, 20

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................2, 8, 14, 17

*Mwani v. bin Laden*,
    417 F.3d 1 (D.C. Cir. 2005) .........................................................................................8

*Nader v. FEC*,
    725 F.3d 226 (D.C. Cir. 2013) .................................................................2, 13, 18, 19

*Okolie v. Future Servs. Gen. Trading & Contracting Co., W.L.L.*,
    102 F. Supp. 3d 172 (D.D.C. 2015) .........................................3, 8, 22, 23, 24, 25, 26

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
    879 F.3d 339 (D.C. Cir. 2018) ...............................................................................2, 8

*Raines v. Byrd*,
    521 U.S. 811 (1997) ..................................................................................................13

*Second Amend. Found. v. U.S. Conf. of Mayors*,
    274 F.3d 521 (D.C. Cir. 2001) ....................................................................................8

*Sherley v. Sebelius*,
    610 F.3d 69 (D.C. Cir. 2010) ....................................................................................15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...................................................................................2, 8, 13, 14, 18

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) ....................................................................................................8

*United States v. Ferrara*,
    54 F.3d 825 (D.C. Cir. 1995) ................................................................3, 25

*Wertheimer v. FEC*,
    268 F.3d 1070 (D.C. Cir. 2001) ....................................................19, 20, 21

**Statutes**

52 U.S.C. § 30104 ....................................................................................7, 20, 21

52 U.S.C. § 30109 ...........................................................................1, 5, 6, 9, 13

52 U.S.C. § 30116 .............................................................................................6, 7

D.C. Code § 13-334 ........................................................................................23, 24

D.C. Code § 13-423 ............................................................................23, 24, 25, 27

**Other Authorities**

11 C.F.R. § 109.21 .............................................................................................5, 7

Fed. R. Civ. P. 4 ....................................................................................................22

Fed. R. Civ. P. 12 ....................................................................................1, 8, 11

Hr'g Tr., *Giffords v. FEC*,
    No. 1:19-cv-1192-EGS (D.D.C. Nov. 1, 2021), ECF 89 ................6, 10, 12

@MattForMontana, X, https://perma.cc/4YMK-DX7J ......................................4

Mem. Op., *Giffords v. FEC*,
    No. 1:19-cv-1192-EGS (D.D.C. Oct. 14, 2021), ECF 88 ......................5, 9

Order, *Giffords v. FEC*,
    No. 1:19-cv-1192-EGS (D.D.C. Nov. 1, 2021), ECF 75 ........................10

Representative Matthew M. Rosendale, Sr., https://tinyurl.com/27zhfvxr ..................19

## INTRODUCTION

Plaintiff has alleged a convoluted and wide-ranging conspiracy to violate the Federal Election Campaign Act's (the "Act") prohibition on coordinated communications. These allegations implicate more than eight entities, including Defendant Matt Rosendale for Montana. Plaintiff's Amended Complaint does not cure the fundamental defects in Plaintiff's claims. And since this case was initially filed, yet more defects have arisen. Plaintiff has failed to state claims against Defendant Matt Rosendale for Montana. And Plaintiff's claims still suffer from two jurisdictional defects requiring dismissal: lack of both standing and personal jurisdiction.

*First*, Plaintiff has failed to state a claim for which this Court may grant relief because Plaintiff has not met the Act's preconditions for bringing this citizen suit. Under the Act, Plaintiff must first obtain a court order that the FEC has "fail[ed] . . . to act" on Plaintifff's administrative complaints, and that the FEC's failure was "contrary to law" before Plaintiff may file a citizen suit, like this one. 52 U.S.C. § 30109(a)(8). Here, although the district court that made the contrary-to-law determination authorizing this suit concluded that the FEC had failed to act, *Giffords v. FEC*, 2021 WL 4805478, at *8 (D.D.C. Oct. 14, 2021), that decision was erroneous in light of the D.C. Circuit's intervening decision in *Campaign Legal Center v. 45Committee, Inc.*, 118 F.4th 378 (D.C. Cir. 2024). Specifically, the contrary-to-law court held that the FEC's deadlocked votes regarding Plaintiff's administrative complaints were not actions within the scope of the Act. But the D.C. Circuit in *45Committee* held that such votes *are* "actions" that defeat failure-to-act claims. *See* 118 F.4th at 390-91. Defendant Matt Rosendale for Montana was not a party to the contrary-to-law action, and *45Committee* represents an "intervening change in the applicable legal context" regarding that court's decision. *Id.* at 389 (citation omitted). So this Court is not bound by the contrary-to-law court's decision authorizing this suit. *Id.* at 389. Accordingly, this Court should dismiss Plaintiff's Amended Complaint under Rule 12(b)(6). *Id.* at 392.

*Second*, Plaintiff has not met the "irreducible constitutional minimum" of demonstrating that it has standing to raise these claims against any of the Defendants. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

In any event, Plaintiff has not demonstrated its standing to sue Defendant Matt Rosendale for Montana, a candidate campaign committee, in particular. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 346 (D.C. Cir. 2018) (requiring standing for each claim). In its Amended Complaint, Plaintiff alleged that it has suffered a "competitive" injury in its ability to compete with Defendant Matt Rosendale for Montana and with co-Defendants National Rifle Association of America Political Victory Fund ("NRA-PVF") and National Rifle Association of America Institute for Legislative Action ("NRA-ILA," collectively "NRA Defendants"). ECF 81 ¶¶ 6, 43 ("Am. Compl").[1]

The D.C. Circuit's carefully cabined "competitor standing" doctrine does not apply to Plaintiff's claims against the candidate campaign committee Defendant Matt Rosendale for Montana, for multiple reasons. *See, e.g.*, *Gottlieb v. FEC*, 143 F.3d 618, 620-22 (D.C. Cir. 1998). First, Plaintiff is not a candidate or a candidate campaign committee, so Plaintiff does not compete with the candidate campaign committee Defendant Matt Rosendale for Montana. Second, any alleged harm to Plaintiff's participation in the political process is too attenuated and speculative to constitute a sufficient injury. Third, Plaintiff cannot invoke, as Plaintiff's own injury, a purported competitive harm to some other non-party candidate. Fourth, even if Plaintiff pleaded a cognizable injury-in-fact, that injury would not be redressable by this Court, because Plaintiff has only pleaded *retrospective* violations of the Act. *E.g.*, *Nader v. FEC*, 725 F.3d 226, 228 (D.C. Cir. 2013).

---

[1] Plaintiff has also sued another candidate campaign committee, Josh Hawley for Senate.

Plaintiff's attempt to cure its lack of standing by pleading an informational injury likewise fails. Plaintiff has all the factual information that the Act requires Defendant Matt Rosendale for Montana to disclose. Plaintiff's Amended Complaint is replete with allegations purporting to summarize precisely all this information.

*Third*, this Court lacks personal jurisdiction over Defendant Matt Rosendale for Montana. As Plaintiff acknowledges, Defendant is an out-of-District entity with no ties to the District of Columbia, apart from mandated FEC filings. Am. Compl. ¶¶ 11, 140. Under longstanding precedent, Defendant's legally mandated interactions with the federal government do not give rise to personal jurisdiction under the "government contacts" doctrine. A "nonresident's entry into the District of Columbia for the purpose of contacting federal governmental agencies cannot serve as a basis for personal jurisdiction," and "[s]uch contacts are 'excluded from the jurisdictional calculus.'" *Okolie v. Future Servs. Gen. Trading & Contracting Co., W.L.L.*, 102 F. Supp. 3d 172, 177 (D.D.C. 2015) (quoting *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 25 (D.D.C. 2014)) (cleaned up); *accord United States v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995). More recently, *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 40-47 (D.D.C. 2018), concluded that D.C. lacks personal jurisdiction over an out-of-District campaign committee that had even more contacts with D.C. than the D.C. contacts Plaintiff alleges here.

This Court should grant Defendant Matt Rosendale for Montana's motion to dismiss with prejudice, as Plaintiff cannot cure these defects by repleading.

## STATEMENT OF ALLEGATIONS

Defendant Matt Rosendale for Montana generally denies Plaintiff's factual allegations, especially the allegations that Defendant has engaged in a conspiracy to violate campaign-finance law. For purposes of this Motion-to-Dismiss-stage filing, however, even assuming arguendo that Plaintiff's allegations were true, they fail to state a claim or clear multiple jurisdictional hurdles.

A.    **Factual Allegations**

Plaintiff has sued, among other entities, Matt Rosendale for Montana. Defendant Matt Rosendale for Montana was former U.S. Representative Matt Rosendale's "authorized campaign committee" when he "was a candidate for the United States Senate in Montana in 2018" and for the U.S. House of Representatives in 2022. Am. Compl. ¶ 38. In 2024, Representative Rosendale decided not to seek reelection, and is no longer a Member of Congress. *See* @MattForMontana, X (March 8, 2024, 12:45PM ET), https://perma.cc/4YMK-DX7J.

Plaintiff alleges that Defendant Matt Rosendale for Montana "transact[s] business within the District of Columbia, including the regular filing of campaign finance reports with the FEC." Am. Compl. ¶ 11; *see id.* ¶ 140 (same). Plaintiff also alleges that Rosendale himself appeared at one fundraiser in Washington D.C. *See id.* ¶ 129.[2] Plaintiff has had minimal interaction with Defendant, alleging that Plaintiff "opposed . . . Matt Rosendale" and that "Giffords PAC"—an organization related to, but distinct from, Plaintiff—"made a . . . $2,500 contribution to Rosendale's [Senate-campaign] opponent Jon Tester." *Id.* ¶¶ 24-25. Plaintiff also alleges that it has engaged in "legislative advocacy for positions" that Rosendale "opposed while in office." *Id.* ¶ 33-34.

Plaintiff has alleged a scheme whereby "[co-Defendants] NRA-PVF and NRA-ILA's coordinated communication with Donald J. Trump, Thom Tillis, Tom Cotton, Cory Gardner, Ron Johnson, Matt Rosendale, and Josh Hawley through a common vendor amount[ed] to millions of dollars of in-kind contributions to these candidates in excess of [the Act's] contribution limits, and in violation of [the Act's] source prohibitions and reporting requirements." *Id.* ¶ 141.[3]

---

[2] Plaintiff has not sued Rosendale himself.

[3] The political consulting firms that Plaintiff alleges are part of the conspiracy are not located in Washington D.C., so any alleged contacts between Defendant and those firms do not support personal jurisdiction. *See* Am. Compl. ¶¶ 68 (Virginia and Maryland), 70 (Virginia).

**B.    Procedural Allegations and Background**

**1.** This case arises out of administrative complaints Plaintiff filed with the FEC. *Id.* ¶ 7.

Relevant here, Plaintiff's September 14, 2018 FEC administrative complaint alleged that "[co-Defendant] NRA-ILA made illegal, unreported, and excessive in-kind contributions to Matt Rosendale for Montana in the form of coordinated communications." *Id.* ¶ 144 (citing 11 C.F.R. § 109.21). Plaintiff "supplemented the Rosendale Complaint" with further allegations on February 8, 2019. *Id.* ¶ 146. Plaintiff alleges that the FEC allegedly "failed to take action on the matter[]." *Id.* ¶ 151. But that is not accurate, as explained below.

**2.** On April 24, 2019, Plaintiff "filed a civil action" against the FEC "in the U.S. District Court for the District of Columbia under 52 U.S.C. § 30109(a)(8)(A), which provides Plaintiff a cause of action for 'a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed.'" Am. Compl. ¶ 152. The Act permits complainants to sue the FEC if the complainant is "aggrieved . . .by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed." 52 U.S.C. § 30109(a)(8)(A). Defendant Matt Rosendale for Montana was *not* a party to this litigation in the "contrary-to-law" court.

Meanwhile, in February 2021, while that litigation was pending, the FEC "held a series of votes" related to Plaintiff's administrative complaint against Matt Rosendale for Montana (among other Defendants). Mem. Op., *Giffords v. FEC*, No. 1:19-cv-1192-EGS (D.D.C. Oct. 14, 2021), ECF 88 at 9. "By a vote of 3-2, the FEC failed to find reason to believe violations occurred" and "[b]y a vote of 2-3, the FEC also failed to find no reason to believe violations occurred." *Id.*

After summary-judgment briefing, "the Court issued an order" on September 30, 2021, "denying the [FEC's] motion for summary judgment and granting [Plaintiff] Giffords's cross-

motion for summary judgment. The Court found that the FEC's failure to act on the administrative complaints was contrary to law, and ordered the FEC to act on Giffords's complaints within 30 days by making a reason-to-believe determination under 52 U.S.C. § 30109(a)(2)." Am. Compl. ¶ 153 (internal citations omitted).

On October 26, 2021, during that 30-day window ordered by the court, the Commissioners held a hearing and again considered the administrative complaints, including those against Matt Rosendale for Montana. Hr'g Tr., *Giffords v. FEC*, No. 1:19-cv-1192-EGS (D.D.C. Nov. 1, 2021), ECF 89 at 6-7 ("Hr'g Tr."). According to FEC counsel, "[w]hen the matters were called up again . . . there were no apparent changes in th[e] positions" on the February 2021 reason-to-believe votes. *Id.* at 7. The Commissioners then "took an additional vote on whether to close the file. That vote did not pass. There were two in favor, three opposed and one commissioner recused." *Id.* Additionally, the "two commissioners who had voted to find no reason to believe violations were committed and to close the file . . . submitted to the administrative record their statement of reasons[.]" *Id.*

Nevertheless, on November 1, 2021, "the Court issued an Order declaring that the FEC had 'failed to conform' to the September 30 Order and authorizing Plaintiff Giffords to 'bring a civil action to remedy the violations involved in the original complaints' against the NRA '[p]ursuant to 52 U.S.C. § 30109(a)(8)(C).'" Am. Compl. ¶ 154 (citation omitted).

**3.** Plaintiff filed the instant lawsuit on November 2, 2021, against Defendant Matt Rosendale for Montana, among other Defendants. Plaintiff did so "to remedy the violations involved in

the original [FEC administrative] complaints." *Id.* (quoting 52 U.S.C. § 30109(a)(8)(C)). Plaintiff

has brought three claims against Defendant Matt Rosendale for Montana:

(1)  "In 2018, Matt Rosendale for Montana accepted [prohibited corporate] contributions of up to $383,196 from [co-Defendant] NRA-ILA, in the form of coordinated expenditures, in violation of 52 U.S.C. § 30116(a)(2)(A)." *Id.* ¶ 173.

(2)  "In 2018, Matt Rosendale for Montana accepted [excessive in-kind] contributions of up to $383,196 from [co-Defendant] NRA-ILA, in the form of coordinated expenditures, in violation of 52 U.S.C. § 30116(a)(1)." *Id.* ¶ 176.

(3)  "In 2018, Matt Rosendale for Montana accepted contributions of up to $383,196 from [co-Defendant] NRA-ILA, in the form of coordinated expenditures, but failed to report those contributions to the FEC in violation of 52 U.S.C[.] § 30104(b)(4) and 11 C.F.R. § 109.21(b)." *Id.* ¶ 180.

Plaintiff requests (1) declarations that Defendant Matt Rosendale for Montana violated the

law; (2) an injunction against Defendant Matt Rosendale for Montana "from accepting any future

excessive or illegal in-kind contributions in the form or coordinated communications with the [co-

Defendants] NRA-PVF or NRA-ILA"; and (3) "an appropriate civil penalty." *Id.* pp. 45-47.

**ARGUMENT**

This case should be dismissed for multiple reasons.

As an initial matter, Plaintiff has failed to state claims against Defendant Matt Rosendale

for Montana because Plaintiff has failed to satisfy the Act's preconditions for bringing this citizen

suit. The FEC did *not* fail to act on Plaintiff's administrative complaints, under controlling D.C.

Circuit precedent. *See 45Committee*, 118 F.4th at 390-91. And this Court is not bound by the con-

trary-to-law court's contrary determination because (1) Defendant Matt Rosendale was not a party

to that litigation; and (2) the D.C. Circuit's *45Committee*'s holding represents an "intervening

change in the applicable legal context." *Id.* at 389; *see Herrera v. Wyoming*, 587 U.S. 329, 343

(2019).

Further, Plaintiff has not met its burden to demonstrate that this Court has jurisdiction for two independent reasons.

First, Plaintiff has not met Article III's "'irreducible constitutional minimum'" of standing: Plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560); *accord Common Cause v. FEC*, 108 F.3d 413, 417 (D.C. Cir. 1997). Because "'standing is not dispensed in gross,'" Plaintiff "'must demonstrate standing separately for each form of relief sought.'" *Owner-Operator*, 879 F.3d at 346 (quoting *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017); *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

Second, this Court lacks personal jurisdiction over Defendant Matt Rosendale for Montana. "Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing a factual basis for personal jurisdiction." *Okolie*, 102 F. Supp. 3d at 175 (citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)); *accord Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (citation omitted). "To meet that burden, the plaintiff 'must allege specific acts connecting [the] defendant with the forum.'" *Okolie*, 102 F. Supp. 3d at 175 (alteration in original; quoting *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)). This requires more than "mere conclusory assertions." *Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 29 (D.D.C. 2014) (collecting cases). Plaintiff has not carried that burden.

## I.    Plaintiff has failed to state claims against Defendant Matt Rosendale for Montana because Plaintiff has not satisfied the Act's preconditions to bringing this citizen suit.

Plaintiff has failed to satisfy the Act's prerequisites for bringing this citizen suit. Under binding D.C. Circuit precedent, the FEC's votes on Plaintiff's administrative complaints were sufficient "acts" under the Act to defeat a contrary-to-law claim. *45Committee*, 118 F.4th at 390-92.

As a result, "[t]he Commission thereby conformed with the contrary-to-law decision, rendering the preconditions for [this] citizen suit unsatisfied." *Id.* at 392. This Court can and should independently evaluate whether Plaintiff has satisfied those prerequisites. And because Plaintiff has not done so, the Court should dismiss Plaintiff's claims.

**A.** The FEC acted on Plaintiff's administrative complaints, so this citizen suit was erroneously authorized under binding D.C. Circuit precedent. *See id.* at 390-92.

Plaintiff is only entitled to bring this citizen suit if properly authorized by another district court. The Act provides, in relevant part, that "[a]ny party aggrieved by" the FEC's "failure . . . to act on [an administrative] complaint during the 120-day period" after receiving it may sue the FEC, seeking a court "declaration" that the failure to act is "contrary to law." 52 U.S.C. § 30109(a)(8). If a court finds that the FEC's failure to act on a complaint is contrary to law, it "may direct the [FEC] to conform with [that] declaration within 30 days." *Id.* § 30109(a)(8)(C). Only if the FEC does not conform, a plaintiff can file a citizen suit. Specifically, a plaintiff can bring "a civil action" in its own name against the subject of the complaint, "to remedy the violation" alleged "in the original complaint." *Id.*

Here, the FEC *did* act on the administrative complaints against Defendant Matt Rosendale for Montana (and the other Defendants). That defeats the basis for this lawsuit. In April 2019, Plaintiff filed a contrary-to-law action based on the FEC's alleged "failure . . . to act" on its administrative complaints against Defendants. Am. Compl. ¶ 152. Defendant Matt Rosendale for Montana was not a party to that action. While that litigation was pending, in February 2021, the FEC held votes to determine whether there was "reason to believe" the complaints' allegations, which the Act requires prior to beginning an investigation into the alleged violations. 52 U.S.C. § 30109(a)(2); Mem. Op. at 9-10. Those votes deadlocked. *See* Mem. Op. at 9-10. Later, the parties

filed cross motions for summary judgment. Am. Compl. ¶ 153. On September 30, 2021, the Court granted Plaintiff's motion for summary judgment, concluding that the FEC had failed to act on Plaintiff's complaints and ordering it to conform with its order "within 30 days." Mem. Op. at 30-31 ("[T]here is no evidence before the Court indicating that the FEC has taken any actions to discuss or to vote on the matters . . . during any subsequent executive session since February 23, 2021.").

Following the Court's order, the FEC held another meeting on October 26, 2021, during the order's 30-day window for taking action. At that meeting, its Commissioners again considered Plaintiff's administrative complaints. Hr'g Tr. at 7. "When the [administrative complaints] were called up again . . . there were no apparent changes" to the February 2021 reason-to-believe votes. *Id.* That same day, the Commissioners "took an additional vote on whether to close the file. That vote did not pass." *Id.*

Despite the FEC's actions during the 30-day window, the contrary-to-law court concluded that the FEC had "failed to conform" with its declaration. Order, *Giffords v. FEC*, No. 1:19-cv-1192-EGS (D.D.C. Nov. 1, 2021), ECF 75 at 1. As a result, the Court held that Plaintiff "may bring 'a civil action to remedy the violations involved in the original complaint[s]' against" defendants. *Id.* The Court grounded its decision in its conclusion that the FEC had failed to act because the reason-to-believe and close-the-file votes had failed. Hr'g Tr. at 9-10. Nonetheless, the court explained that it was "a novice in this proceeding," and expressed uncertainty with that determination, stating that "if the Court hypothetically today were to say to the plaintiff, [p]roceed with your private action, then that would be a legitimate issue to be raised by defense counsel, that it was premature at that point." *Id.* at 8, 10.

As the D.C. Circuit's recent decision in *45Committee* explains, the contrary-to-law court's determination was erroneous because the FEC has acted on the Plaintiff's complaints. 118 F.4th at 390-91. In *45Committee*, the D.C. Circuit rejected a similar argument that "the Commission's failed reason-to-believe vote did not constitute the kind of conformance with the contrary-to-law determination that precludes a citizen suit." *Id.* at 385. The D.C. Circuit held that "[w]hen a contrary-to-law decision arises from the Commission's failure to act on a complaint at all, the Commission conforms" to the contrary-to-law court's declaration by "tak[ing] at least some cognizable enforcement step under the statute," including "holding a reason-to-believe vote, regardless of the vote's outcome." *Id.* at 390; *see id.* (explaining that "an action that would enable the Commission to prevent (or prevail in) the [contrary-to-law] suit," such as "holding a reason-to-believe vote," is the type of action that "had it been performed, would have left [the plaintiff] without the ability to bring (or win) her contrary-to-law suit"). The D.C. Circuit concluded that, because the FEC had held a (deadlocked) reason-to-believe vote during the 30-day window, the citizen-suit court properly dismissed the action. *Id.* at 392.

Under *45Committee*, therefore, the FEC's failed reason-to-believe and close-the-file votes here are "cognizable enforcement step[s]" that the FEC took "in response to the complaint." *Id.* at 391. On this point, Plaintiff seems to agree. *See* Pl.'s Resp., ECF 39 at 7 & n.2 (contending that a vote to close the file is a type of action the FEC may take to conform with the contrary-to-law court's declaration). Accordingly, the contrary-to-law court erroneously concluded that the FEC had failed to conform with its declaration when it authorized this citizen suit. Thus, Plaintiff has failed to satisfy the Act's preconditions for bringing this citizen suit.

**B.** As a result, this Court should dismiss Plaintiff's claims, because the "contrary-to-law court's prior decision" is not "preclusive on the citizen-suit court"—*i.e.*, this Court. *45Committee*, 118 F.4th at 389.[4]

The contrary-to-law court's determination that the FEC had failed to act has no preclusive effect here for two independent reasons: (1) Defendant Matt Rosendale for Montana was "not a party" to the failure-to-act suit; and (2) there has been an "intervening change in the applicable legal context" since the contrary-to-law court's authorization of this action. *Id.* The Supreme Court has held that the types of "intervening change[s]" justifying an exception to issue preclusion include situations in which "an earl[ier] decision [was] based upon a now repudiated legal doctrine," and where "legal principles ha[ve] changed significantly since a judgment." *Herrera*, 587 U.S. at 343 (cleaned up) (concluding that "a change in the law" justified an exception to preclusion in that case).

The *45Committee* decision represents such an intervening change. The D.C. Circuit decided *45Committee* after the contrary-to-law court issued its order authorizing Plaintiff's citizen suit. And before *45Committee*, no court had definitively held that "an action that would enable the Commission to prevent (or prevail in) the [contrary-to-law] suit," such as "holding a reason-to-believe vote," is the type of action that "had it been performed, would have left [the plaintiff] without the ability to bring (or win) her contrary-to-law suit." 118 F.4th at 390. The prior confusion on this point is adequately demonstrated in Defendants' and Plaintiff's prior briefing on their motions to dismiss the original complaint. *See generally* ECF 30, 31-1, 35-1, 39, 42, 43, 44.

---

[4] Although the Act's "citizen-suit preconditions . . . are nonjurisdictional," they are properly raised under Rule 12(b)(6) for "fail[ure] to state a claim." *45Committee*, 118 F.4th at 386, 392.

Buttressing this point, the contrary-to-law court acknowledged the uncertainty surrounding this issue. *See* Hr'g Tr. at 10.

Accordingly, this Court is not bound by the contrary-to-law court's determination that Plaintiff has satisfied the Act's preconditions to bring this suit. *45Committee* controls this case, and it requires dismissal of Plaintiff's claims.

## II. Plaintiff lacks standing because it cannot avail itself of competitor standing and has not pleaded a sufficient informational injury.

Even if Plaintiff had raised cognizable claims, Plaintiff lacks standing. Although the Act provides Plaintiff a *cause of action* (whose preconditions have not been met here), Plaintiff must separately demonstrate Article III standing: "Section [30109](a)(8)(A) does not confer standing; it confers a right to sue upon parties who otherwise already have standing." *Common Cause*, 108 F.3d at 419; *accord Nader*, 725 F.3d at 228; *Hassan v. FEC*, 893 F. Supp. 2d 248, 254 n.6 (D.D.C. 2012) (collecting cases); *Citizens for Resp. & Ethics in Wash. v. FEC*, 799 F. Supp. 2d 78, 85 (D.D.C. 2011). And the FEC's alleged failure to act on Plaintiff's administrative complaint is not sufficient injury. *See Jud. Watch, Inc. v. FEC*, 180 F.3d 277, 277 (D.C. Cir. 1999) (per curiam) (lawsuit must be based on "an injury *stemming from* the FEC's dismissal of [an] administrative complaint") (emphasis added); *id.* at 277-78 (evaluating and rejecting informational injury as basis for standing).

As the Supreme Court has held, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 578 U.S. at 339 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). Instead, for a "statutory violation [under the Act] to constitute an injury in fact, . . . the statute must protect" some "concrete interest" of the plaintiff, meaning that the law must "afford the putative plaintiff a

right to be free of a harm capable of satisfying Article III." *Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1064 (D.C. Cir. 2019) (alteration in original).

When an "'asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else,' standing will often be difficult to establish." *Gottlieb*, 143 F.3d at 621 (emphasis omitted) (quoting *Lujan*, 504 U.S. at 562). And the "injury in fact component of the standing inquiry is often difficult for organizational plaintiffs . . . to satisfy." *Citizens for Resp. & Ethics in Wash. v. FEC*, 401 F. Supp. 2d 115, 120 (D.D.C. 2005).

Here, Plaintiff cannot demonstrate injury-in-fact or redressability under the D.C. Circuit's competitor-injury doctrine. *Spokeo*, 578 U.S. at 338-39. And Plaintiff's attempt to cure these defects by pleading an informational injury likewise fails.

**A.  Plaintiff lacks competitor standing because (1) it has not suffered any competitive injury and (2) any such injury would not be redressable.**

Under binding D.C. Circuit precedent, Plaintiff lacks "competitor standing" to sue Defendant Matt Rosendale for Montana. Plaintiff neither qualifies as a competitor of Defendant Matt Rosendale for Montana that can suffer an injury by this Defendant's alleged conduct, nor would any such alleged injury be redressable by this Court.

In its Amended Complaint, Plaintiff has primarily pleaded that it has been injured by the alleged "competitive advantages *the NRA has obtained*":

> Plaintiff Giffords has been, and continues to be, injured by the NRA Affiliates' illegal campaign contributions. Giffords is a gun safety organization that exists in part to compete with the NRA and the candidates and policies it supports. Giffords directly opposed the campaigns of several of the candidates who participated in the NRA scheme and who benefited from the NRA Affiliates' illegal contributions. Giffords also continues to engage in legislative advocacy for positions each of the NRA's beneficiaries has opposed while in office. Giffords is injured by the competitive advantages the NRA has obtained by flouting campaign finance laws[.]

Am. Compl. ¶ 6. (emphasis added). Plaintiff has also pleaded that it has been "injured by the competitive advantages" that the "Rosendale Campaign" allegedly obtained "by flouting campaign

finance laws." *Id.* ¶ 43. Notably, though, Plaintiff explains that this alleged injury is due to the "competitive fundraising advantage that the Rosendale Campaign . . . enjoy[s] over the *candidates* supported by Giffords." *Id.* ¶ 42 (emphasis added).

The D.C. Circuit has "found" competitor standing for "already established candidates . . . to challenge an 'assertedly illegal benefit' being conferred upon someone with whom those candidates compete." *Hassan*, 893 F. Supp. 2d at 254 n.6 (citation omitted) (collecting cases); *see Am. Inst. of Certified Pub. Accts. v. IRS*, 804 F.3d 1193, 1197 (D.C. Cir. 2015) ("the basic requirement common to all our cases is that the complainant show an actual or imminent increase in competition, which increase we recognize will almost certainly cause an injury in fact") (quoting *Sherley v. Sebelius*, 610 F.3d 69, 73 (D.C. Cir. 2010)); *AB PAC v. FEC*, 2023 WL4560803, at *5 (D.D.C. July 17, 2023) ("No court has ever extended the political competitor-standing doctrine beyond political candidates and parties[.]").

Consequently, the D.C. Circuit has not extended competitor standing to a case like this one. And the principles underlying the D.C. Circuit's decisions demonstrate that Plaintiff's assertion of "competitor standing" fails for multiple reasons.

**1.** The D.C. Circuit has foreclosed competitor standing in cases (like this one) in which a non-candidate alleges it has suffered an injury from a candidate's receipt of allegedly impermissible campaign resources. Most prominently, *Gottlieb v. FEC* considered a claim brought by a political action group, other nonprofit organizations, and a group of voters alleging a candidate's campaign committee impermissibly received campaign funds. 143 F.3d at 619. The *Gottlieb* plaintiffs alleged the candidate's campaign committee unlawfully "transfer[ed] . . . contributions

earmarked for the primary campaign" to another fund to avail itself of federal matching funds. *Id.*[5] The D.C. Circuit rejected three forms of alleged competitive injury.

*First*, *Gottlieb* held that non-candidates like Plaintiff here do not "compete" (for purposes of standing) with candidates. *Gottlieb* "noted that *a candidate*—as opposed to individual voters and *political action groups*—would theoretically have standing based upon a 'competitive injury,'" but the plaintiff must "show that he personally competes in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit." *Hassan*, 893 F. Supp. 2d at 254 n.6 (emphases added; quoting *Gottlieb*, 143 F.3d at 621).

Here, Plaintiff is a "nonpartisan, nonprofit 501(c)(4) organization . . . that is dedicated to saving lives from gun violence." Am. Compl. ¶ 14. So it "cannot show that [it] personally competes in the same arena with candidates." *Hassan*, 893 F. Supp. 2d at 254 n.6. "Only another candidate could make such a claim." *Gottlieb*, 143 F.3d at 621.[6]

*Second*, the D.C. Circuit has foreclosed private parties' ability to assert a "supposed injury to their 'ability to influence the political process,'" because such an injury "rests on gross speculation and is far too fanciful to merit treatment as an 'injury in fact.'" *Id.* (citation omitted). So

---

[5] Although the allegations in this case differ from the allegations in *Gottlieb*, the same principles apply. At core, both cases consider a candidate receiving resources that the plaintiffs allege the candidate should not have received, whether under the federal matching-funds statute or under more general campaign-finance limits.

[6] Assuming for the sake of argument that organizations like political action groups could compete with candidates, Plaintiff is not such an organization. Thus, even under an expansive (and erroneous) reading of the D.C. Circuit's precedent, Plaintiff could not have even plausibly "competed" with Defendant Matt Rosendale for Montana. Plaintiff distinguishes between Plaintiff and "Giffords PAC"—a "political action Committee" that "supports and endorses candidates and elected officials who promote policies to reduce gun violence and oppose the influence of the gun industry and the NRA, including by making political contributions and independent expenditures." Am. Compl. ¶¶ 14, 16. Only "Giffords PAC"—not Plaintiff Giffords—"made . . . a $2,500 contribution to Rosendale's opponent Jon Tester." *Id.* ¶ 24.

were Plaintiff to plead that Plaintiff's "support for rival candidates was rendered less effective because" the alleged illegal campaign contributions provided Defendant "greater funds with which to sway voters," that "conclusion rests on a series of hypothetical occurrences, none of which [Plaintiff] can demonstrate came to pass." *Id.*[7]

At bottom, a theory that some party gained an advantage over influencing the political process "'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.'" *Id.* (quoting *Lujan*, 504 U.S. at 562). Here, whether Defendant Matt Rosendale for Montana gained a competitive advantage over voters because of the alleged campaign-finance violations depends on the unpredictable choices and actions of voters—and thus is too speculative to constitute injury-in-fact.

*Finally*, non-candidates may not bootstrap their claims to the purported "'unfair treatment' burdening" a candidate—and then invoke the alleged competitive injury that Plaintiff's preferred candidate might have faced. *Id.* at 622.[8]

**2.** Even assuming for the sake of argument that competitor standing applied to an impermissible-receipt case like this lawsuit (and that Plaintiff has adequately pleaded such an injury), Plaintiff still lacks standing here. Competitor-injury standing does not apply where Plaintiff has only alleged *retrospective* violations, because "a favorable decision here will not redress the

---

[7] This case is unlike those where courts have found a competitive injury-in-fact. For instance, in *Buchanan v. FEC*, the political-candidate plaintiff was denied the ability to participate in a crucial part of the electoral process: a debate. 112 F. Supp. 2d 58, 65 (D.D.C. 2000).

[8] Although there are cases in which "the interests of candidates and voters are so intertwined that an injury to the candidate causes correlative harm to voters," this is not such a case. *Gottlieb*, 143 F.3d at 622 (collecting cases). Plaintiff still must assert its own "concrete and personalized injury." *Id.* For instance, "when the candidate is prevented from appearing on a ballot altogether," those who would vote for that candidate suffer their own injury. *Id.*

injuries [Plaintiff] claims." *Nader*, 725 F.3d at 228; *see Spokeo*, 578 U.S. at 338-39 (redressability is a necessary element of standing). Here, Plaintiff has alleged violations from the 2018 election and does not identify any current or future violations—nor could Plaintiff, considering that Rosendale is no longer a Member of Congress.

The only cases in which the D.C. Circuit has recognized competitor standing are cases in which the plaintiffs have alleged an injury in an *ongoing or future* election. *Nader*, 725 F.3d at 228 ("In *Shays*, we held that candidates had competitor standing to challenge an FEC regulation they claimed would harm their chances in the *next election*. In *LaRoque*, we held that a candidate had competitor standing to seek to enjoin the Attorney General from enforcing the Voting Rights Act in a way that would diminish the candidate's chances of victory in an *upcoming election*.") (emphases amended; citations omitted).

Unlike plaintiffs in those cases with "ongoing campaigns" identified in *Nader*, Plaintiff here "seeks to compel FEC enforcement against [Defendant Matt Rosendale for Montana] years after the campaign has run its course." *Id.* at 228-29. Accordingly, even if this Court "were to afford [Plaintiff] the relief [it] seeks, that outcome would not reverse the [] harms that [Plaintiff] alleges [it] suffered . . . or compensate [it] for them." *Id.* at 229 (collecting cases). While Plaintiff makes the threadbare assertion that it "continues to be [] injured by the NRA Affiliates' illegal campaign contributions," Am. Compl. ¶ 6, Plaintiff's allegations regarding alleged illegal contributions to Defendant Matt Rosendale for Montana relate solely to the 2018 election, *see id.* ¶¶ 24, 63, 128-31, 138, 140-41, 144-46, 159, 163, 171-76, 179-80.

Plaintiff cannot cure this lack of redressability through re-pleading (again). Even if Plaintiff generally stated that it will oppose Rosendale in the future, or that Plaintiff would support any of Rosendale's future opponents, such "statements on the matter are too speculative to provide the

basis for an injury to [its] competitive interests." *Nader*, 725 F.3d at 229. That's especially true given that Rosendale ultimately did not run for reelection in 2024 and is no longer a Member of Congress. *See* Representative Matthew M. Rosendale, Sr., https://tinyurl.com/27zhfvxr (last visited March 7, 2025). The speculative nature of any such allegations is also compounded by the fact that the alleged harm in this case requires the further actions of third parties (the NRA Defendants).

### B. Plaintiff's purported informational injury is foreclosed by D.C. Circuit precedent because Plaintiff already has all the factual information to which the Act could possibly entitle it.

Plaintiff also lacks standing to bring claims against Defendant Matt Rosendale for Montana because Plaintiff has not suffered an "informational injury" affecting its "informed participation in the political process." *Nader*, 725 F.3d at 230 (citation omitted). As reflected in Plaintiff's lengthy Amended Complaint citing myriad disclosures, this lawsuit is only possible because Defendants have already disclosed all factual information the Act could possibly require.

The D.C. Circuit has held that there are only limited circumstances when private parties have standing to sue on the basis that they have "fail[ed] to obtain information which must be publicly disclosed pursuant to a statute." *Id.* at 229 (quoting *FEC v. Akins*, 524 U.S. 11, 21 (1998)). "[T]he nature of the information allegedly withheld is critical to the standing analysis." *Common Cause*, 108 F.3d at 417.

Plaintiff cannot "establish injury in fact merely by alleging that [it] has been deprived of the knowledge as to whether a violation of the law has occurred." *Id.* at 418; *accord Jud. Watch, Inc. v. FEC*, 293 F. Supp. 2d 41, 46 (D.D.C. 2003) ("The court in *Common Cause* distinguished that type of injury, which creates Article III standing, from an injury that occurs when a person is deprived of information that a law has been violated."). The D.C. Circuit has held that the Act does not require "disclosure" of the "fact" of coordination—which is the entire basis of Plaintiff's Amended Complaint—because "'coordination' appears to us to be a legal conclusion that carries

19

certain law enforcement consequences." *Wertheimer v. FEC*, 268 F.3d 1070, 1075 (D.C. Cir. 2001). Otherwise, identifying a legal conclusion as a disclosable fact "would be tantamount to recognizing a justiciable interest in the enforcement of the law," which courts have long rejected. *Id.* at 1074. Or it would require this Court to conclude that "seek[ing] the same information from a different source" is enough for an informational injury—which courts have likewise rejected. *Id.* at 1075.[9] As this Court has held, Plaintiff has no Article III injury when it "already possess[es] the information [it] claim[s] to lack." *All. for Democracy v. FEC*, 335 F. Supp. 2d 39, 48 (D.D.C. 2004); *accord All. for Democracy v. FEC*, 362 F. Supp. 2d 138, 148-49 (D.D.C. 2005) ("because the plaintiffs already have access to everything they are entitled to under the FECA, their alleged informational injury is not cognizable injury under the FECA, sufficient to satisfy the standing requirement") (cleaned up).

The Act only creates "the right to know who is spending money to influence elections, how much they are spending, and when they are spending it." *Citizens for Resp. & Ethics in Wash v. Am. Action Network*, 410 F. Supp. 3d 1, 12 (D.D.C. 2019) (citing *Akins*, 524 U.S. at 24-25); *accord Akins*, 524 U.S. at 20 ("'political committees' must disclose contributors and disbursements to help voters understand who provides which candidates with financial support"); *Judicial Watch*, 293 F. Supp. 2d at 46 ("Such an injury occurs when a voter is deprived of information showing how much money a candidate spent during an election, or the identity of donors to a candidate's

---

[9] In fact, one of Plaintiff's requests for relief is for Defendants to re-file their reports and simply provide the same information with different labels attached to already-disclosed funds: "Order Defendants to file corrective reports with the FEC for each periodic report that a Defendant was required, but failed, to report in-kind contributions made or accepted in the form of coordinated communications, or misstated in-kind contributions as independent expenditures." Am. Compl. at p. 46.

campaign, because both types of information are useful in voting and are required by Congress to be disclosed.").

Under the Act, regardless of whether an entity makes a direct contribution versus an independent expenditure, it must make the same factual disclosures to the public. Plaintiff's Amended Complaint is replete with allegations regarding precisely the information that the Act already required Defendant to disclose.[10] So Plaintiff cannot "dispute that all [Defendants] currently report all disbursements or that each transaction [Plaintiff] allege[s] is illegal is reported in some form." *Wertheimer*, 268 F.3d at 1074.

The D.C. Circuit's decision in *Campaign Legal Center v. FEC* does not change this conclusion. 31 F.4th 781 (D.C. Cir. 2022). There, unlike here, there were no individualized disclosures of each expenditure. To the contrary, the intervenor-defendant political action committee in that case only disclosed "'lump sum' disbursements." *Id.* at 790. These lump sums included aggregated "payroll, salaries, travel, lodging, rent, or fundraising" expenses, but did not "reveal which portion of each expenditure funded coordinated activities." *Id.* Thus, if plaintiffs in that case were to succeed, that defendant "would be required to *disaggregate* its reporting to show the actual amounts of various expenditures that were in-kind contributions." *Id.* (emphasis added).

Here, there is no need for such disaggregation. Defendants have already made expenditure-by-expenditure disclosures. Thus, the only result that Plaintiff seeks is relabeling those expenditures as coordinated communications. This case therefore both falls outside of *Campaign Legal Center*'s holding and does not implicate the D.C. Circuit's concern that "political committees and

---

[10] Defendant Matt Rosendale for Montana does not admit or concede that Plaintiff's Amended Complaint accurately and wholly reports, summarizes, or characterizes any publicly available filings or disclosures. Those public documents are the best source for the information they contain, and they speak for themselves.

campaigns could simply report information in increasingly broad, undifferentiated lump sums" to avoid expenditure-by-expenditure disclosure. *Id.* at 792. Plaintiff therefore lacks standing because it has failed to plead an informational injury.

**III.    This Court lacks personal jurisdiction over Defendant Matt Rosendale for Montana.**

This case also suffers from a further jurisdictional defect: Plaintiff has not pleaded—and cannot plead—facts sufficient to demonstrate that this Court has personal jurisdiction over Defendant Matt Rosendale for Montana. Defendant is an out-of-District entity lacking sufficient contacts with D.C. to give rise to specific personal jurisdiction, let alone general personal jurisdiction. And even after amending its Complaint, Plaintiff has not pleaded sufficient facts to demonstrate that this Court has personal jurisdiction over Defendant Matt Rosendale for Montana.

Plaintiff has pleaded only one basis for this Court's personal jurisdiction: Defendant Matt Rosendale for Montana allegedly "transact[s] business within the District of Columbia, including the regular filing of campaign finance reports with the FEC." Am. Compl. ¶ 11; *see also id.* ¶ 140 ("Similarly, Matt Rosendale for Montana . . . failed to report the coordinated communications as contributions to the FEC in Washington, D.C.").[11] These allegations are insufficient.

There are two forms of personal jurisdiction: "[1] general or all-purpose jurisdiction, and [2] specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *accord Okolie*, 102 F. Supp. 3d at 175. Subject to minimum constitutional requirements, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). For out-of-District entities like Defendant Matt Rosendale for Montana, the D.C.

---

[11] Plaintiff also includes one allegation that Rosendale himself (*not* his campaign committee) appeared "[a]t a July 18, 2018 fundraiser in Washington, D.C." Am. Compl. ¶ 129.

Code has one set of provisions governing general jurisdiction (D.C. Code § 13-334) and another set for specific jurisdiction (*id.* § 13-423). *Okolie*, 102 F. Supp. 3d at 175. Neither applies here.

**1.** This Court lacks general personal jurisdiction because Defendant Matt Rosendale for Montana (1) is *not* a "foreign corporation *doing business in the District*" (2) that has also been served in the District. D.C. Code § 13-334(a) (emphasis added). Both elements are necessary, and Defendant satisfies neither.

*First*, Defendant does not "do[] business" in D.C. for purposes of Section 13-334(a). The "scope of the phrase 'doing business' as used in the D.C. Code has been found to be 'co-extensive with the reach of' general jurisdiction under the Due Process Clause." *Okolie*, 102 F. Supp. 3d at 176 (quoting *Day v. Corner Bank*, 789 F. Supp. 2d 150, 155-56 (D.D.C. 2011)). So this Court only has jurisdiction if Defendant's "affiliations with the [District] are so 'continuous and systematic' as to render them essentially at home in the forum." *Goodyear*, 564 U.S. at 919 (citation omitted).

Here, "[t]here is no basis on which to conclude" Defendant Matt Rosendale for Montana's "contacts are 'so continuous and systematic as to render [it] essentially at home' in the District." *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 890 (D.C. Cir. 2021) (quoting *Daimler*, 571 U.S. at 139). Defendant is an out-of-District entity that operated political campaigns in Montana. And although Plaintiff conclusorily alleges that Defendant "transact[s] business within the District of Columbia," the only concrete contacts Plaintiff points to are FEC filings and Rosendale's appearance at a single fundraiser. Am. Compl. ¶¶ 11, 129. The FEC filings are irrelevant under the "government contacts" doctrine. *See infra* pp.24-26. And a *candidate's* appearance at a D.C. fundraiser hardly makes the Defendant *campaign committee* "at home" in D.C. *Erwin-Simpson*, 985 F.3d at 890.

*Second*, assuming that Plaintiff could satisfy Section 13-334(a)'s first "doing-business" prong, Defendant was not served in the District. Instead, Plaintiff served Defendant Matt Rosendale for Montana by registered mail to Defendant's Montana post-office box. ECF 15. Thus, this Court may not exercise personal jurisdiction over Defendant under the D.C. Code's express terms requiring service in D.C. *See Erwin-Simpson*, 985 F.3d at 890 ("[Defendant] is not subject to general jurisdiction in the District [because] the . . . the record shows that the plaintiffs did not serve [defendant] in the District of Columbia, as required by section 13-334(a). Instead, they mailed copies of the summons and complaint to the defendant[.]"); *accord Okolie*, 102 F. Supp. 3d at 175-76 ("If a plaintiff fails to serve the foreign corporation in the District in th[e] manner [prescribed by the D.C. Code], [it] is 'foreclosed from benefiting from [the Code's] jurisdictional protection.'") (quoting *Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227, 233 (D.C. 2006)); *Gowens v. Dyncorp*, 132 F. Supp. 2d 38, 42 (D.D.C. 2001) (no personal jurisdiction because service at Virginia headquarters did "not meet the requirements of D.C. Code § 13-334").[12]

**2.** This Court also lacks specific personal jurisdiction under D.C. Code Section 13-423 because the only contacts with D.C. that Plaintiff has pleaded with particularity are Defendant's statutorily mandated interactions with the federal government. But these contacts may not give rise to personal jurisdiction under the "government contacts" exception to personal jurisdiction. And Plaintiff's suggestion that Defendant fundraised or received funds from D.C. is insufficient to confer specific personal jurisdiction—especially because this case does not concern alleged campaign-finance violations arising from that specific fundraising.

---

[12] The D.C. Court of Appeals has held that compliance with § 13-334(a) is a necessary element of personal jurisdiction—not simply a procedural or service requirement. *See, e.g.*, *Everett v. Nissan Motor Corp. in U.S.A.*, 628 A.2d 106, 108 (D.C. 1993).

Under Section 13-423(b), this Court has personal jurisdiction based on "claim[s] for relief arising from acts enumerated" in Section 13-423(a). The only "enumerated" act that Plaintiff has invoked, *see* Am. Compl. ¶ 11, is that Defendant allegedly "transact[ed] any business in the District," D.C. Code § 13-423(a)(1). This "transacting business provision of the District's Long Arm Statute is coextensive with the due process clause of the Fifth Amendment." *Jackson v. George*, 146 A.3d 405, 413 (D.C. 2016) (quoting *Fam. Fed'n for World Peace & Unification Int'l v. Hyun Jin Moon*, 129 A.3d 234, 242 (D.C. 2015)). "In other words, the defendant must have minimum contacts with the forum so that exercising personal jurisdiction over it would not offend traditional notions of fair play and substantial justice. . . . This means that the non-resident defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." *Id.* (alteration in original; quoting *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723, 727 (D.C. 2011)).

Under the "government-contacts" doctrine, however, "contact with a federal instrumentality located in the District will not give rise to personal jurisdiction." *Ferrara*, 54 F.3d at 831 (citing *Envt'l Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976)). As this Court has put it, "a nonresident's entry into the District of Columbia for 'the purpose of contacting federal governmental agencies cannot serve as a basis for personal jurisdiction,'" and "[s]uch contacts are 'excluded from the jurisdictional calculus.'" *Okolie*, 102 F. Supp. 3d at 177 (quoting *Alkanani*, 976 F. Supp. 2d at 25). Otherwise, "permitt[ing] [D.C.] courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum." *Envt'l Research*, 355 A.2d at 813. For instance, merely making "filings" with the SEC "fall[s] within the

federal 'government contacts principle' rule . . . and must be excluded from any calculation of intrajurisdictional activity in determining the defendants' amenability to suit here." *Inv. Co. Inst. v. United States*, 550 F. Supp. 1213, 1217 (D.D.C. 1982).

Here, government contacts—that is, statutorily-mandated FEC filings—are campaign committee Defendant Matt Rosendale for Montana's *only* contacts with the forum that Plaintiff has alleged with any particularity. Am. Compl. ¶ 11 ("the regular filing of campaign finance reports with the FEC"). Such allegations are plainly insufficient.

Plaintiff also *perhaps* suggests that Rosendale fundraised once in D.C. *Id.* ¶ 129. All Plaintiff pleaded, however, was that Rosendale spoke at "a July 18, 2018 fundraiser in Washington, D.C." *Id.* Even assuming arguendo that this satisfies Plaintiff's burden to "allege specific acts connecting [the] defendant with the forum," *Okolie*, 102 F. Supp. 3d at 175 (citation omitted), a candidate appearing at one fundraiser—and even receiving campaign contributions as a result of such an appearance—is insufficient to confer specific personal jurisdiction over his campaign committee, *see Bigelow*, 299 F. Supp. 3d at 42-44. This is especially true because Plaintiff does not plead how its claims "ar[i]se from" Rosendale's attendance at that fundraiser. *Id.* at 45 (citation omitted).

**3.** This lawsuit is similar to another case that held D.C. lacked personal jurisdiction over an out-of-District congressional campaign committee. *See id.* at 40-47. In *Bigelow*, the plaintiff sued a Virginia politician and that politician's campaign committee for a copyright violation. Both the candidate and his campaign committee were residents of Virginia. *Id.* at 40. And—much like Defendant Matt Rosendale for Montana—"[t]he Committee did not maintain offices or employ individuals in the District of Columbia." *Id.*

The court first concluded that D.C. lacked *general* personal jurisdiction because "the [campaign] Committee's alleged contacts with the District of Columbia are insufficient to establish that it was 'doing business' in the District." *Id.* at 42. If anything, the jurisdictional allegations in *Bigelow* were more robust than the allegations here. Nevertheless, the court concluded that even the combination of the following factors failed to render a campaign committee "at home" in D.C.: (1) receiving "payments from donors in the District"; (2) "ma[king] payments to persons and entities in the District for advertising and fundraising"; (3) the use of a website accessible in D.C. and an "email blast" to D.C.; (4) alleged "relationships with the National Republican Congressional Committee, the Republican National Committee, and other 'professionals based in the District of Columbia'"; and (5) "alleged contacts with the District of Columbia arising out of [the candidate's] employment as a member of Congress." *Id.* at 42-44.[13] Furthermore, the "fact that the [campaign] Committee was organized with the Federal Election Commission based in the District does not, standing alone, provide jurisdiction." *Id.* at 43 n.4.

Those same facts were also insufficient to give rise to *specific* personal jurisdiction. *Id.* at 44-45. "None of the" following activities meets the requirements of Section 13-423(a)(1): "defendants solicited and received funds from donors in the District of Columbia, made payments to persons and entities in the District for advertising and fundraising, and maintained professional relationships with persons and entities in the District." *Id.* at 44. Even if any of those contacts were enough to theoretically be capable of conferring jurisdiction, the plaintiff did not explain how they

---

[13] Plaintiff here has not sued Rosendale himself, but *Bigelow* also addressed why D.C. lacks personal jurisdiction over an out-of-District candidate when a complaint lacks "any specific actions that [the candidate] took in or directed toward the District of Columbia during the campaign." *Bigelow*, 299 F. Supp. 3d at 43-45 (collecting cases).

were related to the claim at issue. *Id.* at 46. In other words, the *Bigelow* plaintiff—like Plaintiff here—failed to explain why its claim arose out the defendants' alleged contacts with D.C.

## CONCLUSION

Defendant Matt Rosendale for Montana respectfully requests that this Court grant Defendant's Motion and dismiss Plaintiff's Amended Complaint with prejudice.

Dated: March 7, 2025                                Respectfully submitted,

                                                    */s/ Scott A. Keller*
Chris K. Gober                                      Scott A. Keller
D.C. Bar No. 975981                                 D.C. Bar No. 1632053
Lex Politica PLLC                                   Lehotsky Keller Cohn LLP
14425 Falcon Head Blvd. E-100                       200 Massachusetts Ave. NW
Austin, TX 78738                                    Washington, DC 20001
(512) 354-1783                                      (512) 693-8350
cgober@lexpolitica.com                              scott@lkcfirm.com

Eric Wang                                           *Counsel for Defendant*
D.C. Bar No. 974038                                 *Matt Rosendale for Montana*
Lex Politica PLLC
2200 Wilson Blvd.
Suite 102-72
Arlington, VA 22201
(202) 417-3528
ewang@lexpolitica.com

28

**CERTIFICATE OF SERVICE**

This document was served on counsel for Plaintiff and all other counsel that have made an appearance in this case on March 7, 2025, using the Court's CM/ECF file and service system.

/s/ Scott A. Keller
Scott A. Keller